## SHAFER v. KILLPACK et al.

No. 3202.   Decided June 14, 1918.   (173 Pac. 948.)

1. TRIAL—TRIAL BY COURT—FORECLOSURE—ISSUES FOR JURY.  In a suit to foreclose a mortgage, where defendant interposed a defense of fraud practiced by his codefendant, it was not error to refuse to submit the issue of fraud to the jury where such issue was immaterial. (Page 471.)

2. TRIAL—EQUITABLE ISSUES—EFFECT OF VERDICT.  In mortgage foreclosure proceedings, the findings of the jury are advisory only, and the court may direct such findings as the facts warrant.[1] (Page 471.)

3. VENDOR AND PURCHASER—NOTICE OF ADVERSE INTERESTS—OCCUPATION.  The occupancy of land is notice to every one of the occupant's interests, except where a vendor remains in possession for a short time after having conveyed the premises, unless such oc-

[1] *Escamilla* v. *Pingree*, 44 Utah, 421, 141 Pac. 103, L. R. A. 1915B, 475.

cupancy continues so long as to be inconsistent with possession at grantee's sufferance.[2]    (Page 472.)

4. MORTGAGES—FORECLOSURE—DEFENSES. In a suit to foreclose a mortgage, wherein defendant set up fraud practiced upon him by his codefendant, plaintiff's recovery cannot be defeated by such fraud where he was not a party thereto. (Page 473.)

5. ESTOPPEL—CLAIM TO PREMISES—ACQUIESCENCE IN MORTGAGE. Where defendants' conduct led plaintiff at the time of making the loan and taking a mortgage, to conclude that they knew he was contemplating buying the premises or making a loan thereon, and they asserted no right to the premises, *held,* that they are estopped from asserting any claim adverse to him. (Page 473.)

Appeal from the District Court of Salt Lake County, Third District; *Hon. Geo. F. Goodwin,* Judge.

Suit by John F. Shafer against John D. Killpack, Jr., James S. W. Frame and wife, and others to foreclose a mortgage.

Judgment for plaintiff. Defendant James S. W. Frame and wife appeal.

AFFIRMED.

*Skeen & Skeen* for appellants.

*S. P. Armstrong* for respondents.

GIDEON, J.

The complaint in this action contains the usual allegations for the foreclosure of a mortgage and for a deficiency judgment against the makers of the note secured by the mortgage. None of the defendants answered except James S. W. Frame and his wife, Frances Elizabeth Frame. These defendants filed a counterclaim alleging ownership of the premises in question and possession for more than ten years; that

---

[2] *Toland* v. *Corey,* 6 Utah, 392, 24 Pac. 190; *Land & Live Stock Co.* v. *Dixon,* 10 Utah, 334, 37 Pac. 573.

their codefendant John D. Killpack, Jr., through fraud, succeeded in obtaining possession of a deed executed on or about July 9, 1910, by Frame and wife conveying title to the premises. Judgment was entered foreclosing the mortgage and directing the sale of the premises. From that judgment Frame and wife appeal.

The facts, as disclosed by the record, briefly stated, are these: Frame was the owner of and, with his family, occupied the land in question as a home in the year 1910 and for some years prior thereto. During the early part of 1910 negotiations were had by and between Frame and Killpack with a view of trading the premises belonging to Frame for certain lands situate in the state of Idaho. The premises owned by Frame were incumbered with a mortgage in the sum of $1,500. The premises to be received in exchange were also incumbered with a mortgage for the sum of $3,500, and Frame agreed to give a second mortgage on the same premises to Killpack for $3,000 additional. The grantee in each deed assumed the respective mortgages. Negotiations had proceeded to the point that on July 9, 1910, Frame and wife executed a deed to Killpack for the premises in question. That deed was left in the possession of an attorney in Salt Lake City to be delivered to Killpack whenever such attorney found the title to the premises in Idaho to be as represented. Thereafter, on or about August 20, 1910, the attorney, having satisfied himself as to the title of the Idaho property, delivered the deed to Killpack, and the same was immediately recorded. Prior to that date, and some time during the month of July, 1910, Killpack, accompanied by plaintiff, Shafer, visited said premises, and found the same in possession of appellants, Mrs. Frame being present that day. At the request of plaintiff and Killpack she showed them through the house and explained the cost of constructing it. At the trial Mrs. Frame testified that she then understood that Shafer was there with a view of either buying or making a loan on the property. No inquiry was made by Shafer as to whether Frame or his wife had any interest in the property, and neither of them indicated or intimated to Shafer that they, or either of them, claimed any interest or ownership in said

premises.   On August 20, 1910, plaintiff loaned Killpack $3,000, taking a note and mortgage on the premises executed by Killpack and wife to secure that loan, and out of the money paid off the preexisting mortgage of $1,500.   Shafer then gave the balance of the $3,000 to Killpack.   It is admitted that at the time of the loan Frame with his wife and family still occupied the premises, and did for some time thereafter.

At the trial a jury was impaneled at the request of appellants.   After the testimony was practically all in the court discharged the jury and determined the issues without the assistance or findings of the jury.   The appellants insist that that was error, claiming that they were entitled to have the judgment of the jury upon the question of fraud raised by their counterclaim.   The court made findings of fact determining all the issues on the question of fraud against appellants.

It is not pretended or claimed in this court that there was any evidence in the record which in any way sustained the allegations of the counterclaim that plaintiff was a party to any fraud, if any fraud was practiced, on the part of Killpack.   It is conceded that, so far as plaintiff was concerned, he acted entirely in good faith in making the loan, and had no knowledge or information as to the dealings or nature of the contract between Frame and Killpack. While it is true that the court in its findings determined all of the issues on the question of fraud against appellants, holding there was no evidence to sustain the allegations, still, as we view the record, that becomes immaterial, and it was not error to refuse to submit such issues to the jury.

Furthermore, these proceedings were equitable and the findings of the jury were only advisory to the court.   It was in the power of the chancellor to direct such findings as in his judgment the facts warranted.   *Escamilla* v. *Pingree,* 44 Utah, 421, 141 Pac. 103, L. R. A. 1915B, 475.   Counsel for appellant in their brief state that they rely wholly upon the doctrine or principle that the Frames being in the open possession of the premises was sufficient notice to put Shafer upon inquiry, and it was his duty to ascertain by some investigation what interest, if any, they retained or had

in the premises occupied by them. In support of that contention counsel cite and rely upon two former decisions of this court, namely, *Toland* v. *Corey,* 6 Utah, 392, 24 Pac. 190, and *Land & Live Stock Co.* v. *Dixon,* 10 Utah, 334, 37 Pac. 573. We have no intention of departing from the rule laid down by this court in the case first above cited ''that an occupant's possession is actual notice of his title, and all persons with notice of such possession must at their peril take notice of his full title in the premises, no difference what the record shows,'' under facts similar to the facts in that case or to the facts as found in the case last above cited. But the facts in the case at bar do not bring it within the rules announced in those cases. In the Toland Case the defendant there founded his rights upon a foreclosure sale based upon mortgages executed by one who hold the record title, but who was not in possession of the premises. It appears that the plaintiff in that case acquired from the party giving the mortgage a deed to the premises prior to the execution and delivery of the mortgages, but did not record such deed. During all of that time, however, the plaintiff was in the open and actual possession of the premises, and in an action to quiet title to the premises the court held that the mortgagee was charged with notice of any interest that plaintiff had in the premises by reason of her occupancy. In *Land & Live Stock Co.* v. *Dixon,* supra, the plaintiff obtained title from one not in possession of the premises, and obtained such title while the defendant was in the actual and open possession of the premises, which possession had been continuous for some years. In neither of those cases was the party asserting title adverse to the occupant claiming title by deed or conveyance from the occupant.

To the general rule that any one occupying land is notice to every one of any interest the occupant may have in such premises there is an exception recognized by the great weight of authority, namely, that a vendor having by deed conveyed the title to the premises and remaining in possession for a short time is not constructive or actual notice to purchasers of any interest claimed by the grantor in such premises, and unless the occupancy continues for such

length of time as would be inconsistent with the idea of re-taining possession at the sufferance of the grantee, the presumption will be that he is in possession of such premises with the permission of the grantee and subordinate to and consistent with the grant.

In this case the deed of conveyance was executed on July 9, 1910. It was not delivered to the purchaser, Killpack, until some time about August 20th following. During that time the appellants remained in possession of the premises, but, as disclosed by the record, the deal was not completed until the last-named date. Nor was the deed delivered until that time. Appellants having conveyed by absolute deed all their rights in the premises, and plaintiff in no way being connected with any fraud, if there was any fraud in the dealings between Killpack and appellants, appellants ought not be permitted to defeat plaintiff's recovery by reason of any alleged fraud of which Killpack might have been guilty. *Baldwin* v. *Anderson,* 103 Miss. 462, 60 South. 578; *Smith* v. *Phillips,* 9 Okl. 297, 60 Pac. 117; *Murry* v. *Carlton,* 65 Wash. 332, 118 Pac. 322, 44 L. R. A. (N. S.) 314; *Hass* v. *Cregg,* 152 Pac. 1126; *Morgan* v. *McCuin,* 96 Ark. 512, 132 S. W. 459.

Furthermore, the acts of appellants were such as to lead plaintiff to conclude that they knew he was either contemplating buying the premises or making a loan thereon, and they at no time asserted or claimed any right of ownership in the premises, and it would now be inequitable and unjust to permit them to assert any claim adverse to plaintiff. *Murry* v. *Carlton,* supra; *Porter* v. *Johnson,* 172 Cal. 456, 156 Pac. 1022.

We are not unmindful that there are authorities holding contrary to the views herein expressed, but, in our judgment, the better reasoning supports these conclusions. The authorities discussing the issues presented by this case are collated and annotated in a note to *Garbutt* v. *Mayo,* 12 L. R. A. (N. S.) 117.

We do not wish to be understood as determining the rights of one occupying premises for any great length of time after having conveyed the title to the same, or as holding that a

grantor, after such occupancy, would be estopped from asserting any after-acquired title or interest that he may have in the premises. These questions are not involved in this case.

If this were a case of first impression, the writer of this opinion would readily agree with and concur in the text of 2 Devlin on Deeds (3d Ed.) section 764, where the author, discussing this subject, says:

"It is perhaps to be regretted that courts should hold parties bound by any other notice than that furnished by the record. Land is sold in many instances that the party purchasing has never seen. The purchaser relies upon the records for the purpose of ascertaining his vendor's title, and generally considers himself safe in purchasing when the records show that his vendor's title is indefeasible. But it may happen that the one apparently possessing the title has no title whatever, or has a title subject to liens and incumbrances not disclosed by the record, but manifested by a possession sufficient to affect subsequent purchasers with notice."

We find no reversible error in the record.

The judgment of the court below is affirmed; respondent to recover costs.

FRICK, C. J., and McCARTY, CORFMAN, and THURMAN, JJ., concur.