474          SUPREME COURT OF UTAH.          [June

Utah State Building & Loan Ass'n v. Perkins et al., 53 Utah 474.

---

## UTAH STATE BUILDING & LOAN ASS'N v. PERKINS et al.

No. 2178.   Decided June 18, 1918.   (173 Pac. 950.)

1. JURY—DEMAND FOR JURY TRIAL—TIME—DEMAND. Under Comp. Laws 1907, section 3129, providing that a jury trial must be demanded by written notice to the clerk before the case is set for trial or within a reasonable time thereafter or orally when the case is set, it is too late to demand a jury trial when the case is called. (Page 478.)

2. APPEAL AND ERROR—RESERVATION OF EXCEPTIONS—JURY TRIAL—WAIVER. In the absence of a record showing a timely demand for a jury trial and a refusal and exception, the right to jury trial will be held to have been waived.[1]   (Page 478.)

---

[1] Nichols v. Cherry, 22 Utah, 5, 60 Pac. 1103; Davis v. D. & R. G. R. Co., 45 Utah, 13, 142 Pac. 709.

3. JURY—RIGHT TO JURY TRIAL—EQUITABLE ISSUES.   Where plaintiff sued for money converted and to foreclose mortgage, and defendant counterclaimed, denying the validity of mortgage, it was not error to deny a jury trial, equitable issues being raised, since the findings would be only advisory.[2]   (Page 478.)

4. PLEADING—BILL OF PARTICULARS—SUIT FOR MONEY CONVERTED.   A defendant sued for the misappropriation of funds is not entitled to a bill of particulars as provided for by Comp. Laws 1907, section 2988.   (Page 479.)

5. PRINCIPAL AND SURETY—LIABILITY OF SURETY—MISAPPROPRIATION OF FUNDS.   In a suit against an officer of a corporation and his surety for misappropriation of funds, rent paid to defendant for plaintiff's benefit, but not received by it, cannot be included in the judgment against the surety; it never having become plaintiff's property.   (Page 480.)

6. PRINCIPAL AND SURETY—MISAPPROPRIATION OF FUNDS—EVIDENCE.   In a suit against a corporation's officer and his surety for misappropriation of funds, evidence *held* insufficient to show defendant's liability for taxes charged against him.   (Page 481.)

7. PRINCIPAL AND SURETY—MISAPPROPRIATION OF FUNDS—BANK DEPOSITS.   In a suit against a corporation's officer and his surety for misappropriation of funds, a check paid by plaintiff's debtor and indorsed by defendant and deposited to his personal account is a proper charge.   (Page 482.)

8. PRINCIPAL AND SURETY—MISAPPROPRIATION OF FUNDS—ITEMS CHARGEABLE.   In an action against a corporation's officer for misappropriation of funds which he claimed was due on his salary, such item is properly charged where salary was only to be paid when the business of the company would justify it.   (Page 483.)

9. APPEAL AND ERROR—REVIEW—HARMLESS ERROR.   In an action against a corporation's officer and his surety for misappropriation of funds, the admission of incompetent and irrelevant testimony is harmless where there is ample competent and relevant testimony to support the findings.   (Page 484.)

10. APPEAL AND ERROR—REVIEW—PRESUMPTIONS.   On review it will be presumed that the trial court, when there is material and competent evidence in the record to support its findings, considered such testimony only.[3]   (Page 484.)

[2] *Escamilla* v. *Pingree*, 44 Utah, 421, 141 Pac. 103, L. R. A. 1915B, 475; *Shafer* v. *Killpack*, 53 Utah, 468, 173 Pac. 948.

[3] *Victoria C. M. Co.* v. *Haws et al.*, 7 Utah, 515, 27 Pac. 695; *Spratt* v. *Paulson*, 49 Utah, 9, 161 Pac. 1120.

11. DEEDS—EXECUTION—BLANK DEEDS. A blank deed executed and
acknowledged does not convey title to realty, description to which
has subsequently been supplied, under Comp. Laws 1907, section
1974, providing that the conveyance of realty must be in writing and
subscribed by the grantor.   (Page 484.)

12. ESTOPPEL—VALIDITY OF CONVEYANCE—EVIDENCE. In a suit to fore-
close a mortgage, evidence *held* not to show an estoppel on defend-
ant to deny the validity of the mortgage by acquiescence therein.
(Page 486.)

13. ESTOPPEL—KNOWLEDGE—RIGHT TO. In a suit against a corpora-
tion's officer to foreclose a mortgage given as security for funds
plaintiff cannot urge that defendant is estopped to deny validity
of the mortgage; all the circumstances being known to it.   (Page
486.)

14. MORTGAGES—JUDGMENT—LIEN FOR EXPENSES. Where a mortgagee
under an invalid mortgage paid taxes and interest on a prior in-
cumbrance, the property will not be released from the lien for the
taxes and interest in a suit against the mortgagor for misappro-
priation of funds.   (Page 486.)

15. APPEAL AND ERROR—BRIEFS—ABANDONMENT OF ERROR. Cross-
errors not discussed in the brief of cross-appellant will be considered
to be abandoned.[4]   (Page 487.)

Appeal from the District Court of Salt Lake County, Third
District; *Hon. George F. Goodwin,* Judge.

Suit by the Utah State Building & Loan Association
against D. C. Perkins and another.

Judgment for plaintiff.   Defendants appeal.

REMANDED, with directions.

*Stewart, Stewart & Alexander* for appellants.

*M. E. Wilson* and *J. C. Wood* for respondent.

GIDEON, J.

Plaintiff corporation was organized as a building and loan
association under the laws of Utah in the year 1909.   De-

---

[4] *S. P., L. A. & S. L. R. Co.* v. *Board of Education,* 32 Utah, 305, 99
Pac. 565, 11 L. R. A. (N. S.) 645.

fendant D. C. Perkins was one of the original incorporators, and became treasurer of the company upon its organization, and continued as such until the year 1915. On or about May 5, 1913, the defendant Lion Bonding & Surety Company became surety to plaintiff for Perkins as such treasurer. It was provided in the bond that said surety bound itself to pay plaintiff any amount not exceeding $5,000 for any loss sustained by plaintiff, either in money, or personal property, ''by any act or acts of fraud, dishonesty, forgery, theft, embezzlement, wrongful abstraction or misappropriation on the part of said'' Perkins. In the year 1915 suit was instituted against Perkins and the surety company to recover from Perkins approximately $8,000 alleged to have been wrongfully taken and appropriated by him from moneys belonging to plaintiff, and for judgment against the surety company for the amount of its liability. Issue was joined and trial had before the court. Judgment was entered against Perkins for the sum of $5,200.75, together with $1,010 interest, and against the surety company in the sum of $2,973.85 principal, and $697.23 interest. After the shortage of defendant Perkins. was discovered, and when the amount thereof was uncertain, Perkins and wife executed two blank deeds, and acknowledged the same before a notary public, conveying to the plaintiff, as claimed by it, the interest or equities of Perkins and wife in and to certain real estate located in Salt Lake City as security for any indebtedness or money that might be found owing by Perkins to plaintiff. The court held those deeds to be mortgages and directed that the property described therein be sold, and that the amount received be first applied on the expenses of sale, on the payment of certain taxes on the premises plaintiff had paid, on interest on a pre-existing mortgage against the same premises, and that the balance be credited upon the judgment entered against Perkins. Both defendants appeal from the judgment.

Before considering the merits of the questions presented on the appeal it becomes necessary to dispose of two preliminary questions raised by appellants. At the trial counsel for Perkins stated to the court:

''At the time the case was set for trial the defendant ten-

dered the jury fee and demanded a jury, which was denied by the presiding judge. At this time we again tender the statutory jury fee, and we demand a jury for the trial of the case, it being our contention that this is an action for a money judgment, and that it is in law rather than in equity; that it merely is collaterally in equity through the effort of the plaintiff to attempt in the one cause of action to collect on a so-called money account to foreclose a mortgage."

No demand for a jury was made on the part of the other defendant at that or any other time.

The record does not contain the proceedings had before the presiding judge at the time the case was set for trial. Whether any exceptions were taken to the refusal of the court to have the issues tried by a jury at that time does not appear. Comp. Laws 1907, section 3129, provides that a party who desires a jury for the trial of a cause, or any of the issues thereof, must demand it, either by written notice to the clerk prior to the time of setting such action for trial, or within such reasonable time thereafter as the court may direct, or orally in open court at the time of such setting, and deposit the necessary fee. Otherwise he will be held to have waived trial by jury. It will therefore be seen that the demand for a jury at the time the case was called for trial came too late. Unless there is some record showing a demand at the time specified in the statute, a refusal, and an exception taken to the ruling of the court, the matter is not before this court for review, and the right or privilege of trial by jury will be held to have been waived.

"If, however, the demand and the deposit had not been made in accordance with the statute, the jury would have been waived." *Nichols* v. *Cherry,* 22 Utah, 5, 60 Pac. 1103. "No doubt, if the demand and payment are not made as required by the statute, the party has waived his right to require the court to call a jury. * * *" *Davis* v. *D. & R. G. R. Co.,* 45 Utah, 13, 142 Pac. 709.

Furthermore, plaintiff alleged the execution of certain deeds by Perkins and his wife, and that such deeds were given as security, and that, while in the form of deeds, they were in fact mortgages, and should be so con-

sidered by the court.   Perkins in his counterclaim alleged that the purported deeds were not in fact conveyances of any kind; that he and his wife signed their names to two blank forms of deed, and had the same acknowledged; that they were retained in his possession by being placed in a private box; that at the time said blank forms of deed were executed the descriptions of the real property were not included therein; that no grantee was named in the deeds; that no consideration for either deed was agreed upon or written into the deed, and that in fact there was no writing on the papers except the signatures of himself and wife; that thereafter the officers of the plaintiff company obtained possession of such blank deeds without his consent, and without being authorized by him such officers filled in the descriptions, the name of the grantee, and the consideration, and caused the same to be placed of record.   In his counterclaim Perkins asked an affirmative judgment of the court declaring the deeds to be null and void and that they be canceled.   It will therefore be seen that both by the complaint and counterclaim equitable issues were involved.   The jury's findings on such issues would have been at most, only advisory to the court. *Escamilla* v. *Pingree*, 44 Utah, 421, 141 Pac. 103, L. R. A. 1915B, 475; *Shafer* v. *Killpack*, 53 Utah, 468, 173 Pac. 948, decided this term.

No error was committed by the trial court denying a trial by jury.

It is next contended that the court erred in permitting plaintiff to introduce testimony in support of its complaint for the reason that a demand, under Comp. Laws 1907, section 2988, had been made by the defendants upon the plaintiff to furnish a bill of particulars, and no bill of particulars had been furnished.   That section of our statute reads:

"It is not necessary for a party to set forth in a pleading the items of an account therein alleged, but he must deliver to the adverse party, within ten days after a demand thereof, in writing, a copy of the account, or be precluded from giving evidence thereof.   The court, or a judge thereof, may order a

further account when the one delivered is too general or is defective in any particular."

The section is not applicable to the cause of action stated in the complaint. It is plainly the object of the statute to render it unnecessary for plaintiffs, in suing upon an account, to set out at length the different items going to make up that account. The right, however, is given by that section to a defendant, upon proper notice, to require the plaintiff to furnish the items constituting such account, or statement of account, which, in practice, is designated a "bill of particulars." In actions of that nature the account or items making up the account is the foundation of the action. Here we have an action instituted by plaintiff to recover money which it is alleged Perkins had wrongfully taken from the treasury of the plaintiff company. The evidence of the different amounts of money taken by him, and of the times when such acts were committed, would, of necessity, be within the knowledge of Perkins more than that of plaintiff, and such were the facts as disclosed by the testimony in this case. Any one having misappropriated and misapplied funds belonging to another ought not be permitted, when suit is instituted to recover such funds, to demand that the accuser shall furnish him with a bill of particulars, and upon failure so to do be precluded from offering testimony against the wrongdoer. The statute was never intended to be a shield to rogues. 1 Am. & Eng. L. & P. 781; *Alexander* v. *United States,* 57 Fed. 828, 6 C. C. A. 602; 1 C. J. 653. That contention must therefore be overruled.

Proceeding, now, to the merits: The court, in its judgment, found that Perkins had at various times wrongfully misappropriated and applied to his own use funds belonging to plaintiff, and enumerated the several amounts in ten different items. Each of such findings is attacked by appellants, and it is therefore necessary to consider these several findings or amounts separately.

The court first determined that defendant Perkins, during the year 1914, appropriated to his own use the sum of $282, being money collected for the benefit of plaintiff. The testimony, so far as that item is concerned, is that Per-

kins was agent of the Maryland Mutual Life Insurance Company, and as such received a monthly allowance for the payment of rent and other incidental expenses connected with the agency; that as such agent he occupied and rented offices as a sublessee from plaintiff company; that during the year 1914, while agent of said insurance company, and at the same time treasurer of the plaintiff company, he received from the insurance company at stated monthly periods amounts for the payment of rent aggregating $282. No part of this money was paid into the treasury of plaintiff. There is no serious contention that Perkins is not liable to plaintiff for this amount or that the same should not be taken into account in determining the judgment that should be entered against him, but it is seriously contended that the bonding company is not liable to plaintiff for the same as it is not shown that the money was ever paid to or became the property of plaintiff, and as such was abstracted from the plaintiff company. Under the evidence I am of the opinion that that item should not be included in the judgment against the bonding company. It should, however, be included in the judgment against Perkins.

In the second item the court finds that Perkins, during his employment, some time prior to November 23, 1915, appropriated to his own use and benefit funds of the plaintiff company in the sum of $119.40. The evidence tending to support this charge is that it is one-half of an item of $238 which was found to be a balance owing by the Utah Securities Company, a corporation, to the plaintiff, and was charged to Perkins on the ground that he was president of the securities company. The total amount represents taxes due on certain property purchased by plaintiff from the securities company and for which the securities company was liable, but there is nothing in the record which will support a finding that Perkins was in any way personally liable to pay one-half of that amount, or any part of it, or that any promise made by him to pay the taxes or any part thereof, if one was made, was based upon any legal consideration. In my judgment that item is not supported by any substantial evidence as being a proper charge against Perkins.

482        SUPREME COURT OF UTAH.        [June

Utah State Building & Loan Ass'n v. Perkins et al., 53 Utah 474.

Next is an item of $476.85. There can be no question but that both Perkins and the bonding company are liable for that amount to plaintiff. It consisted of a check paid by a debtor of plaintiff and was indorsed by Perkins and by him deposited to his personal account in the bank.

The fourth item, $1,015, was money wrongfully appropriated and is admitted to be a proper charge against Perkins. It was therefore also correctly included in the judgment against the bonding company.

The fifth item of $6.35 is also admitted to be a proper charge against Perkins. It should also be charged against the bonding company.

The court, in the sixth item, finds that Perkins, during the time he was employed, and prior to January 1, 1915, appropriated to his own use money belonging to plaintiff in the sum of $195.23. I am unable to find any testimony in the record which, in my judgment, would authorize the court to charge that item to either Perkins or the bonding company. It was not included in the judgment entered against the bonding company. It is not clear, or at all satisfactory, as to just how or what the amounts were that go to make the item up, or that it should be charged against the defendants or either of them.

Next the court charges Perkins with having appropriated to his own use the sum of $803.95, money belonging to plaintiff, prior to February 23, 1915. The testimony shows that that item grew out of a real estate transaction had between plaintiff and the securities company. It appears that the amount is one-half of some special taxes levied against certain real property sold to plaintiff by the securities company and which is referred to in the record as the "Howell property." The deed conveying the property from the securities company to plaintiff contains this provision: "Subject to general taxes for the year 1913 and all special taxes levied and unpaid." The only testimony in the record that tends in any way to show Perkins liable for that amount is a statement of the accountant, Mr. Goddard, that in a conversation with Perkins he (Perkins) said, "Those taxes should be paid by the securities company," and further said that he and Mr. Gray would

see to it that they were paid. The defendant Perkins denies ever having made such a statement. In any event there appears to be no consideration for it, and, further, it is contradicted by the terms of the deed conveying the premises to plaintiff. While Perkins was an officer of the securities company, so far as the record discloses, he was not interested in this real estate transaction to any greater extent than the other stockholders of the securities company. I do not find any evidence in the record to support that finding.

In its eighth item the court finds that Perkins, prior to January 1, 1915, appropriated to his own use funds belonging to plaintiff in the sum of $1,000. That finding is abundantly supported by the evidence and is a proper charge both against Perkins and the bonding company.

Next the court finds that Perkins, prior to October 16, 1915, appropriated to his own use $1,002 (evidently an error, as the amount is $1,102 in all other parts of the record). The evidence tends to show that Perkins, prior to the above-named date, was indebted to plaintiff for money used by him, and on that date balanced his account by crediting it with the amount and charging the same against plaintiff. The attempted explanation or justification is that the amount, or some similar amount, was due him on account of salary as treasurer, and that his salary had been fixed by action of the board of directors of the plaintiff company some months prior to that date. The evidence does not support the contention of Perkins that the amount of his salary, or any salary, was definitely determined. On the contrary, the evidence does show that he was to be paid a salary for his services as treasurer of the company only when the business of the company would justify doing so. It does not appear that the directors or other officers of the company ever authorized the application of any such amount, or any amount, or authorized the use or application of the funds of the company for that purpose at that date or at any other date. The finding of the court, so far as that item is concerned, is amply supported by the evidence.

The tenth, or last, item is that Perkins, prior to March 8, 1915, appropriated to his own use the sum of $200, money be-

longing to plaintiff. This is another item claimed by Perkins as money due on salary. The statements herein with reference to the ninth item apply to this. In my opinion Perkins is liable for this $200. The court was correct in including that in the items that go to make up the judgments against both defendants.

The court found that the bonding company was liable to plaintiff for the amounts included in items 1, 3, 4, 8, and 10. All of those items were proper to be included in the judgment against Perkins, and, as indicated, all are properly taken into consideration by the court in arriving at the amount of the judgment against the bonding company except item 1.

There are many assignments of error, both by Perkins and the bonding company, going to the competency or relevancy of certain testimony introduced. There is ample competent and relevant testimony in the record to support those of the court's findings herein approved, and if any error was committed in the introduction of testimony, it was not prejudicial. Furthermore, this court will indulge the presumption that the trial court, when there is material and competent evidence in the record to support its findings, considered only such testimony. *Victoria C. M. Co.* v. *Haws et al.,* 7 Utah, 515, 27 Pac. 695; *Spratt* v. *Paulson,* 49 Utah, 9, 161 Pac. 1120.

Appellant Perkins further contends that the court erred in not granting the relief prayed for in his counterclaim by declaring the purported deeds to be null and void and directing the conveyances to be canceled. The evidence, so far as that transaction is concerned, as it appears in the record, is that some time about May 26, 1915, when it was claimed by the officers of plaintiff that Perkins, as treasurer, was short in his accounts, the amount of such shortage, however, being then unknown or uncertain, Perkins and wife, in order to secure such shortage, if any were found to exist, signed their names to two blank forms of deed and acknowledged the same before a notary public, the notary public being at that time a stenographer employed by plaintiff, and also being secretary of the plaintiff company. It further appears that after Perkins and his wife had signed the deeds

the deeds were kept in the possession of Perkins, that is, they were placed in a pigeonhole or drawer of a desk in the office of plaintiff in which Perkins, during his term of office, kept his private papers; that said deeds remained there until about June 3, 1915, when they were taken out by said notary, and, according to her testimony, she then wrote into the deeds the descriptions of the property, the name of the grantee, and also the names of Perkins and his wife as grantors, and the deeds were then taken by the officers of plaintiff and placed on record. It is not contended by any witness that Perkins was present at the time of the delivery, or that he knew anything of the recording of the deeds until some time afterwards. Neither is it contended by any one that Perkins had directed, instructed, or authorized any one to fill in the descriptions or the consideration in the blank deeds. It is true that there is testimony by the witnesses Bachman and Ketchum, who were officers of the company, that at the time they first saw the deeds, on June 3, 1915, the day they were recorded, the descriptions had then been written into the deeds. But it does not appear that they saw the deeds before they left the hands of the stenographer. On the contrary, it is the positive testimony of the stenographer that the descriptions had not been placed in the deeds at the time of their execution, and that she wrote the same into the deeds the day they were recorded and immediately prior to the time that the same were delivered by her to the witness Bachman, and that she took said descriptions from the abstracts which had been deposited with the deeds.

Comp. Laws 1907, section 1974, respecting the conveyance of real property, reads as follows:

"No estate or interest in real property, other than for leases for a term of not exceeding one year, nor any trust or power over or concerning it, or in any manner relating thereto, can be created, granted, assigned, surrendered, or declared, otherwise than by act or operation of law, or by a conveyance or other instrument in writing, subscribed by the party creating, granting, assigning, surrendering, or declaring the same, or by his lawful agent thereunto authorized by writing."

The provisions of that statute, in order to convey title to

real estate, contemplate that the instrument shall be in writing at the time it is subscribed by the party executing it, and when written shall be declared by him, or acknowledged, that it is executed for the purposes stated in the writing.

I find no authority holding a conveyance effective under similar facts as appear in this record. On the contrary, there appears to be no conflict that blank deeds or blank papers executed as these were are void and do not convey any interest or title whatever. *Southern Pine Lumber Co.* v. *Arnold* (Tex. Civ. App.) 139 S. W. 917; *Allen* v. *Allen,* 48 Minn. 462, 51 N. W. 473; 13 Cyc. 551; 8 R. C. L. 956.

It is, however, insisted by respondent that Perkins is estopped from now denying the validity of the conveyances, and the principal reason urged for the ground of estoppel is that he at no time during the year 1915 made any objection or declaration against the recording of the deeds, but, on the contrary, as it is claimed, acquiesced in the acts of the officers of the company in taking possession of the deeds and recording them. There is, however, nothing in the record to support that conclusion. About the only evidence to be found is that Perkins was at different times informed that the deeds had been recorded, and he made no comment. It is not shown that he at any time gave his approval of what had been done. On the contrary, he retained control over the premises, occupied the residence thereon as a home for himself and children, and continued in that occupancy up until the very day of the trial. The plaintiff company is in no position to urge the ground of estoppel. All of the facts surrounding the execution of the conveyances were known to it, and it cannot, for that reason, claim that it acted to its injury in ignorance of the facts.

It appears from the record, however, that the respondent building and loan association, after the recording of the deeds, paid to the holder of a prior mortgage on the premises accumulated interest amounting to something like $315; also paid taxes assessed against the property. These amounts were expended for the protection of the property and were to the interest of appellant Perkins and were obligations for which the property was liable. They should

therefore be held as liens against the premises in favor of respondent building association. While we are compelled to hold that the refusal of the court to declare the two deeds ineffective and void was error, the property should not be released from the liens for the taxes and interest so paid.

Other errors are assigned by both appellant Perkins and the bonding company, but they are sufficiently answered by the foregoing.

The plaintiff filed a cross-appeal and assigned cross-errors. Its counsel have not seen fit to discuss the cross-errors in their brief, and therefore, under the former holdings of this court, the cross-appeal and cross-errors will be considered abandoned. *S. P., L. A. & S. L. R. Co.* v. *Board of Education,* 32 Utah, 305, 99 Pac. 565, 11 L. R. A. (N. S.) 645.

The cause will therefore be remanded to the district court of Salt Lake County, with directions to correct its findings and enter a decree in accordance with the views herein expressed. Neither party will recover costs on this appeal.

FRICK, C. J., and McCARTY, CORFMAN, and THURMAN, JJ., concur.