## NATIONAL REALTY SALES CO. v. EWING et al.

No. 3391.   Decided January 7, 1920.   (186 Pac. 1103.)

1. EXECUTION—SUBSEQUENT PURCHASER WITH NOTICE OF DEFECTS IN TITLE IS NOT PROTECTED. A subsequent purchaser on execution sale cannot be protected as a bona fide purchaser if he had actual or constructive notice of an unrecorded title, ownership, or interest in the property at any time before payment of the purchase price.[1]   (Page 443.)

[1] *Shafer* v. *Killpack,* 53 Utah, 468, 173 Pac. 948.

2. EXECUTION—POSSESSION OF JUDGMENT DEBTOR'S GRANTEE NOT PUTTING PURCHASER ON NOTICE. In action to quiet title, against a purchaser of land on execution sale and others, by the judgment debtor's grantee which did not record its conveyance until after the execution sale, evidence for plaintiff *held* insufficient to show possession on its part under its unrecorded conveyance so as to charge third parties or purchasers with notice or to put them on inquiry. (Page 446.)

3. EXECUTION—CHARACTER OF POSSESSION TO IMPART NOTICE TO PURCHASER OF OCCUPANT'S TITLE. Possession of realty, to impart notice of the occupant's title and equities to a purchaser on execution sale, must be open, notorious, visible, and continuous. (Page 446.)

4. EXECUTION—SALE NOT INVALIDATED BY INADEQUACY OF PRICE. Mere inadequacy of price was not sufficient to invalidate execution sale as against the judgment debtor's grantee, where the proceedings were fair and regular and there is nothing in the record to suggest fraud or concealment. (Page 447.)

5. EXECUTION—EQUITY WILL NOT AID JUDGMENT DEBTOR'S GRANTEE WHO STOOD BY ON SALE. Equity will refuse its aid, in action to quiet title, to the grantee from a judgment debtor the day after judgment which did not record its conveyance until after sale of the land on execution, but stood by and permitted such sale with subsequent transfers of title in reliance upon it. (Page 447.)

Appeal from District Court, Fourth District, Utah County; *A. B. Morgan,* Judge.

Action by the National Realty Sales Company, a corporation, against H. J. Ewing and others. From judgment and decree for defendants, plaintiff appeals.

AFFIRMED.

*Hancock & Barnes* and *Tanner & Tanner,* all of Salt Lake City, for appellant.

*R. A. Porter,* of Payson, and *Morris & Callister,* of Salt Lake City, for respondents.

CORFMAN, C. J.

Plaintiff commenced this action to quiet the title to a tract of land alleged to be owned by it in Utah county. The complaint was in the usual form for the quieting of title to real property. The defendants filed separate answers, with the exception of H. J. and Myrtle Ewing, who defaulted. The answers of the defendants were of the same legal effect, denying ownership in the plaintiff and relying upon an execution sale of the lands and premises made by the sheriff of Utah county under a judgment secured in the justice court in and for Salt Lake county, in a case wherein H. J. Ewing was plaintiff and H. S. Tanner et al., doing business as copartners under the name of the Farmers' Loan & Trust Company, were defendants. It is alleged by way of answers of the defendants that an abstract of the judgment in said justice court was filed in the district court for Utah county, and that thereupon an execution issued out of said district court, directed to the sheriff of said county, and that under and by virtue of said execution the sheriff, in conformity with statute, sold said real property to the said judgment creditor, H. J. Ewing, who in due course of time received the said sheriff's deed therefor; that thereafter the said H. J. Ewing sold and conveyed the premises to William J. Finlayson, who thereafter executed a mortgage thereon to the defendant Farmers' & Stockgrowers' Bank to secure a loan made by it to the said Finlayson.

The replies made by plaintiff were practically of the same legal effect, alleging as defenses to defendants' answers:

(1) That the said H. J. Ewing, the judgment creditor, in the said case of *Ewing* v. *Tanner et al.*, accepted a note in satisfaction of said judgment in the justice's court prior to the sheriff's levy and sale under execution.

(2) That the judgment and execution under which the execution sale was made did not run against the separate property of the defendants in the case of *Ewing* v. *Tanner et al.*, as copartners, but against their partnership property only, and that therefore the said sheriff's levy against and sale of the separate property of the defendant Tanner was void.

(3) That the said levy was made for the full amount of

said judgment in the justice's court, when in fact a portion of said judgment had been paid, as the defendants herein knew, or might have known by the exercise of ordinary care.

.(4) That the levy and sale were excessive and irregular for the reason that the real property sold consisted of several distinct parcels of land of much greater value than the amount of the judgment under which it was sold, and that the said lands were all sold as one parcel.

(5) That the plaintiff was, with defendants' knowledge, at all times mentioned in their answers, in the absolute, open, quiet, peaceable, notorious and adverse possession of the lands sold.

The case was tried to the court without a jury, and the issues were found in defendants' favor. Plaintiff appeals.

In brief, the plaintiff complains of and assigns as error the failure of the trial court to find on all the material issues in the case; that the evidence does not justify and is insufficient to support the trial court's finding of fact, conclusions of law, and decree; and that the same are contrary to law.

The testimony, briefly stated, shows: May 24, 1911, Henry S. Tanner became the owner of the land in controversy. February 18, 1914, a judgment for $154, interests and costs, was rendered in the justice's court for Salt Lake county against Henry S. Tanner, D. W. Adamson, and W. P. Funk, copartners, doing business under the name of Farmers' Loan & Trust Company in favor of H. J. Ewing, one of the defaulting defendants herein. February 19, 1914, the day following the rendition of the judgment, Henry S. Tanner, by deed, conveyed the land to the National Realty Sales Company, a corporation, the plaintiff in the present case. This deed was not recorded in the office of the county recorder for Utah county until June 28, 1917, at 4:05 o'clock p. m. January 5, 1915, an abstract of the judgment rendered against Henry S. Tanner and others in the justice's court of Salt Lake county was issued out of said court, and said abstract was docketed in the district court of Utah county March 2, 1916, as "Case No. 3482, Civil." Execution issued out of said district court, directed to the sheriff of Utah county, in said civil case

No, 3482, on June 5, 1916, and on July 3, 1916, after pro-
ceeding in accordance with law, said sheriff sold to H. J.
Ewing all the estate, right, title, and interest of Henry S.
Tanner in said lands, and a certificate of sale was issued to
Ewing by said sheriff. After the period of redemption had
expired, to wit, on January 20, 1917, said sheriff made and
executed a sheriff's deed to H. J. Ewing for the said lands
which deed was duly recorded in the office of the county re-
corder for Utah county on said day.

It further appears from the record that the said H. J.
Ewing, June 14, 1917, redeemed said premises from delin-
quent tax sales made for the taxes levied thereon for the years
1910 to and including the year 1914.

June 15, 1917, H. J. Ewing, for a consideration of $1,600,
conveyed said lands by warranty deed to William J. Finlay-
son, which said deed was duly recorded in the office of the
county recorder for Utah county June 28, 1917, at 11:20
o'clock a. m. Said William J. Finlayson, by mortgage dated
June 19, 1917, acknowledged June 22, 1917, mortgaged said
premises to secure a loan of $2,000 to the defendant Farmers'
& Stockgrowers' Bank, which said mortgage was recorded in
the office of the county recorder for Utah county, June 28,
1917, at 11:30 o'clock a. m. William J. Finlayson died in-
testate July 21, 1917.

The preceding facts appear as matters of public record and
are not in dispute between the parties. As we proceed we
shall have occasion to briefly refer to other features of the
testimony having a bearing on the contentions of the respec-
tive parties.

The trial court found, among other things not necessary to
here mention:

That the sheriff of Utah county sold the lands in accordance with
law to the defendant H. J. Ewing; "that the said sheriff, in accord-
ance with the sale to the said H. J. Ewing, executed and delivered
a certificate of sale to said premises; that after the time for re-
demption had expired and neither the said H. S. Tanner nor any
other person claiming under him, or otherwise, having redeemed
the aforesaid lands and premises from said sale, the said sheriff
on or about the 20th day of January, 1917, executed and delivered
to said H. J. Ewing a sheriff's deed to the aforesaid lands and

premises; that at the time of said sheriff's sale, as aforesaid, the said H. S. Tanner had been and was the real owner of the aforesaid lands and premises."

The trial court then proceeds to make further findings to the effect that H. J. Ewing and his wife subsequently sold the premises to William J. Finlayson for a consideration of $1,600, and that he thereafter mortgaged the property to the defendant the Farmers' & Stockgrowers' Bank, to secure a promissory note dated June 19, 1917, for $2,000 (no part of which has been paid), and that the aforesaid transactions were "without notice of any claim by the plaintiff of any right, title, or interest in or to said property."

It is the contention of the plaintiff that, at the time of the sale of the property under execution, the judgment debtor had no interest therein, having previously conveyed the premises to the plaintiff by deed dated February 19, 1914, although the same was not recorded in the office of the county recorder of Utah county until June 28, 1917, after the sale under execution, the issuance of a sheriff's deed to Ewing, his sale and conveyance to William J. Finlayson, defendant's intestate, and the latter's mortgage to the defendant the Farmers' & Stockgrowers' Bank had been made matters of public record. If we correctly understand plaintiff's counsel, they do not seriously contend that the plaintiff had any right under the circumstances to assume that it could stand idly by relying on its unrecorded deed and permit innocent parties to deal with respect to the property without knowledge or any notice whatever of the plaintiff's claims in the property, but that plaintiff's possession of the premises was sufficient to put the defendants on notice. The law is well settled and firmly established, and it may be said to be the general doctrine both in this country and in England, that a subsequent purchaser cannot be protected as a bona fide purchaser if he had actual or constructive notice of an unrecorded title, **1** ownership, or interest in the property at any time before payment of the purchase price. Wade on Notice, section 273; *Beattie* v. *Crewdson,* 124 Cal. 577, 57 Pac. 463; *Shafer* v. *Killpack,* 53 Utah, 468, 173 Pac. 948. In the present case the plaintiff relies on its possession as giving notice of title and

ownership of the premises involved. The testimony shows that the lands in question are fenced, but have no other improvements thereon. Henry S. Tanner testified that the lands were leased by him to a Mrs. Hansen, who farmed a small portion thereof from year to year during his ownership, and that after he deeded the property to the plaintiff Mrs. Hansen continued to make use of the land for pasturage and some farming, as did also a Mrs. Tanner. There is testimony in the record that the land was platted and cut up into city lots which were advertised and offered for sale through the medium of circular letters and newspaper advertisements. The plats of the land were not, however, made matters of public record, nor is it shown that any of the advertising matter came under the notice of any of the defendants. The testimony of the defendants is to the effect that they had no knowledge whatever of any_of these things. The defendants' testimony further tends to show that Henry S. Tanner was informed concerning the judgment rendered against him and that he was given to understand that an effort would be made to collect the judgment. Arman W. Ewing, a brother and agent of the defendant H. J. Ewing, who transacted and directed the business relative to the sale of the lands under execution, and also afterwards with respect to a sale to William Finlayson, testified:

"I informed Mr. Tanner that the sheriff was advertising the property in accordance with law, and I told him that we didn't want to go further with it; that we preferred to have him pay the judgment and costs, which he promised to do. * * * That was during the time the advertising was going on in the Provo paper."

The same witness testified, in substance, that after the premises were sold under execution sale, and his brother had become the purchaser and had received the sheriff's deed, therefor, he and his brother went upon the land with a deputy county surveyor, established the boundaries, and marked the corners of the lands; that at that time there was no one in possession of or using the lands; that they then made arrangements with a nearby farmer to take and use the land under the ownership of H. J. Ewing. Lottie Finlayson, defendant in a representative capacity of the estate of William

Finlayson, deceased, testified that, soon after her husband acquired the property by purchase from H. J. Ewing, her husband died; that she knew the land and had visited it from time to time after the purchase thereof; that it was not occupied by any person, but was left barren and unattended. She further testified that she had no knowledge whatever of the plaintiff claiming an interest in the land until a summons was served upon her in this action. James F. Hiatt, a witness for the defendants, testified that he had some intention of leasing or purchasing the lands under consideration during April, 1917, after the defendant H. J. Ewing had received a sheriff's deed therefor; that he met Mr. Tanner in Salt Lake City, and—

"I told him that Mr. Ewing was offering to sell the land. * * * I told Mr. Tanner that I had called at the recorder's office and found that there was a recorded deed in the name of H. J. Ewing and it was A. W. Ewing that I had been dealing with. This was the first that I heard of H. J. Ewing and that there was a man by the name of Adamson and Funk and Tanner, as I remember it, associated together. This ground was sold to H. J. Ewing at an auction sale in Provo on a certain date, and I described the land, or the proceedings along this line. Mr. Tanner expressed somewhat of surprise that the title had got in that condition, and he told me he would have to look into it. He says, 'they can't sell my land that way, you know.' "

We have reviewed the authorities cited in plaintiff's brief with care, and we fail to find a single case bearing upon the question of possession in which it has been held that possession of the kind and character testified to by plaintiff's witnesses is sufficient, under similar circumstances, to charge third parties or purchasers with notice of ownership or sufficient to put the intending purchaser upon inquiry. To say the least, the testimony of the plaintiff's witnesses was exceedingly vague and doubtful with respect to the question of possession, and the testimony of defendants' witnesses is in conflict therewith. It is held by the courts, in general, and the authorities cited by plaintiff afford no exception to the rule, that possession of real property, in order to impart notice of the occupant's title and equities, must be open, notorious, visible, and continuous. Warvelle on Ab-

stracts, sections 361, 581; Wade on Notice, section 238.     **2, 3**
Moreover, as we have pointed out, Mr. Tanner, as pres-
ident of the plaintiff company, stood by with full knowledge
of the fact that the lands were about to be sold under execu-
tion; that the property afterwards had been sold; and that a
sheriff's deed had been issued to the purchaser and recorded.
More than that, he was apprised that the purchaser was in-
tending to sell the property to third parties.   In the mean-
time he stood placidly by, inactive and without protest, and
permitted the defendants, the subsequent purchaser and in-
cumbrancer, to act upon the title made manifest in H. J.
Ewing by the proceedings made of record against the prop-
erty.

It does seem that the property now under consideration was
sold under the execution for an inadequate price.   However,
mere inadequacy of price was not sufficient to invalidate the
sale when the proceedings were fair and regular and there is
nothing in the record to suggest fraud or concealment.   16
R. C. L. 140; *Wilkins* v. *Rue*, 4 Blackf. (Ind.) 263, 29 Am.
Dec. 368; *Bogle* v. *Bloom*, 36 Kan. 512, 13 Pac. 793.   The
plaintiff was apprised of all the proceedings against its prop-
erty, and had it acted seasonably it could have averted the
acts of which it complains without prejudicing the rights of
the defendants now, as we think, fully established by the con-
duct of the respective parties under the circumstances as dis-
closed by the record before us.

"If there has been unreasonable delay in asserting claims, or if,
knowing his rights, a party does not seasonably avail himself of
means at hand for their enforcement, or suffers his adversary to
incur expense or enter into obligations or otherwise change his posi-
tion, or in any way by inaction lulls suspicion of his demands to the
harm of the other, or if there has been actual or passive acquiescence
in  *  *  *  the act complained of, equity will ordinarily refuse
*  *  * aid  *  *  * of an admitted right." *Stewart* v. *Finkelstone*,
206 Mass. 28, 92 N. E. 37, 28 L. R. A. (N. S.) 634, 138 Am. St. Rep.
370.

Under our statute, Comp. Laws Utah 1917, section 6934,
with respect to execution sales, Henry S. Tanner or the plain-
tiff, could have directed the sale of the property to

have been made in parcels, if so desired. The land   **4, 5** was, as the testimony shows, but one parcel within the meaning of the law. Moreover, the plaintiff could have then asserted its claim of ownership, which it did not do.

The defendants in this action acquired their interests in the property without notice of any rights of the plaintiff in the property as the trial court found, and their rights, in view of the laches of the plaintiff, must be upheld.

We find no prejudicial error in the record before us, and therefore it is ordered that the judgment and decree of the district court be affirmed, with costs.

FRICK, WEBER, GIDEON, and THURMAN, JJ., concur.