**Ned O. GREGERSON and Dixie Gregerson, his wife, Plaintiffs and Appellants,**

v.

**James L. JENSEN and Edra Jensen, Defendants and Respondents.**

No. 18354.

Supreme Court of Utah.

Aug. 2, 1983.

Hans Q. Chamberlain, Cedar City, for plaintiffs and appellants.

Dale M. Dorius, Brigham City, for defendants and respondents.

OAKS, Justice:

This is the second appeal of a suit by buyers against sellers (both husbands and wives) for specific performance of a partially oral 1971 contract for the sale of a third of an acre of unimproved land in Gunnison. The facts are stated in our prior opinion, *Gregerson v. Jensen,* Utah, 617 P.2d 369 (1980). For purposes of this appeal, it is sufficient to repeat that after visiting and measuring the land in question and shaking hands on their oral agreement of sale, Dr. Gregerson, a dentist who desired to establish an office in Gunnison, gave Mr. Jensen, a local resident, a check for $350, inscribed with the notation: "½ payment on land as agreed—other ½ paid when deed delivered." Jensen endorsed the check and deposited it in a bank account he held jointly with Mrs. Jensen.

At the first trial, the district court dismissed the complaint for failure to prove a legal description of the property on which specific performance was sought. We reversed and remanded for a new trial because of newly discovered evidence, an unsigned deed prepared for the sellers' signatures. This writing, in combination with the check, met the requirements of the statute of frauds as to Mr. Jensen and provided

a reasonable likelihood of a different outcome.

The second trial, conducted before a different judge by stipulated consideration of the transcript in the earlier trial plus additional testimony, resulted in another judgment for sellers on buyers' claim for specific performance. Buyers have appealed the denial of specific performance. (There is no appeal from the court's judgment against sellers for $350 plus interest on buyers' alternate claim for damages.)

The court gave three grounds for denying specific performance, but we will discuss only one because it is dispositive for affirmance.[1] For purposes of this opinion, we assume, as buyers maintain, that buyers had an enforceable contract to purchase the property in question, signed by Mr. Jensen in terms sufficient to satisfy the statute of frauds and to provide a basis for a decree of specific performance against him. Mrs. Jensen's position is different. Although she participated in the conversations leading up to the delivery of the check to Mr. Jensen, she signed nothing and has insisted at all stages of this litigation that she had an interest in the property and that she never agreed to sell her property to the buyers.

It appears from findings of fact not challenged by either party that Mr. Jensen was the record owner of the property at all times pertinent to this controversy, but that in 1950 he had conveyed the property to Mrs. Jensen by a warranty deed that remained unrecorded. (This deed was in the files of the mortgagee bank until just before the second trial.) It is also clear that the buyers, who seek specific performance in this suit, have never recorded their contract to purchase.

The buyers claim to prevail over the ownership of Mrs. Jensen on the basis of (1) her failure to record her deed from Mr. Jensen

and (2) buyers' status as bona fide purchasers for value and without notice. Buyers paid value, and we assume for purposes of this appeal (though the Jensens argue to the contrary and the district court so found on the basis of Mrs. Jensen's possession) that the buyers had no notice of Mrs. Jensen's interest. But the buyers' arguments are unavailing for other reasons.

 The interest of Mrs. Jensen is not protected by the statutory notice prescribed in the recording acts, U.C.A., 1953, §§ 57–1–6, 57–3–2, because her 1950 deed was not recorded. However, our statutes do not make recordation a prerequisite to the validity of a deed. Though unrecorded, the deed from Mr. Jensen to Mrs. Jensen was still "valid and binding between the parties thereto." § 57–1–6. The buyers in this transaction did not obtain the statutory protection enjoyed by subsequent purchasers in good faith and for value against unrecorded interests because they did not qualify for that protection by recording their own conveyance (or contract) as required by § 57–3–3.[2] As a result, the recording acts do not dictate the outcome of this controversy.

We therefore turn to the general principles of law that govern the priorities of successive interests apart from the recording acts. Under those principles, buyers' interest under the 1971 contract with Mr. Jensen is subject to Mrs. Jensen's prior rights under the 1950 unrecorded deed from Mr. Jensen. Two reasons dictate this conclusion.

 First, buyers do not qualify for relief as bona fide purchasers. By the weight of authority, a bona fide purchaser must have obtained a legal title to the property in question. *Duncan Townsite Co. v. Lane,* 245 U.S. 308, 38 S.Ct. 99, 62 L.Ed.

---

1. The other two grounds are (1) the deed and check do not constitute a sufficient memorandum to meet the requirements of the statute of frauds, and (2) the parties never arrived at a complete oral agreement on the transaction.

2. 57–3–3. Effect of failure to record.—Every conveyance of real estate hereafter made,

which shall not be recorded as provided in this title, shall be void as against any subsequent purchaser in good faith and for a valuable consideration of the same real estate, or any portion thereof, *where his own conveyance shall be first duly recorded.* [Emphasis added.]

309 (1917); 77 Am.Jur.2d *Vendor and Purchaser* §§ 633, 637 (1975); 5 Tiffany, *The Law of Real Property* § 1258 (3d ed., Jones, 1939).[3] So long as the contract of sale remained executory, these buyers only had an equitable interest in the property. *In re Estate of Sharp,* Utah, 537 P.2d 1034, 1037 (1975); 77 Am.Jur.2d *Vendor and Purchaser* §§ 316–17 (1975). Consequently, they did not qualify as bona fide purchasers who could cut off the earlier legal interest of Mrs. Jensen.

 Second, even if the buyers had acquired a legal interest in the property, they could not prevail over the interest created by their seller's unrecorded deed to Mrs. Jensen (without the aid of the recording acts or the bona fide purchaser rule) because her deed was earlier in point of time. Tiffany states the traditional rule on successive interests in this way:

> [O]ne who has transferred his legal estate to one person cannot thereafter detract from the effectiveness of such transfer by undertaking to transfer it to another. And it is immaterial that the later grantee pays value under the supposition that he is acquiring the property, that is, that he is a "bona fide purchaser for value." ... In other words, apart from statute, transfers of the legal title to land rank, between themselves, according to priority in time.

Tiffany, *supra,* at § 1257. *Accord,* 4 *American Law of Property* § 17.1 (1952); Aigler, "The Operation of the Recording Acts," 22 *Mich.L.Rev.* 405, 405–06 (1924).

For the reasons explained above, the buyers' transaction with Mr. Jensen, as evidenced by Jensen's endorsement of the check for the sale of the property identified by the oral transaction and the unsigned deed, did not cut off the interest of Mrs. Jensen. Since she has never signed any writing sufficient to satisfy the statute of frauds obligating her to sell her property to the buyers, there was, as the district court held, no basis for a decree of specific performance against the sellers.

For purposes of this ruling, we assume the truth of buyers' contention that they made the check solely payable to Mr. Jensen because, in response to their inquiry about who was the record owner, Mrs. Jensen provided them with a tax notice showing him as the sole record owner. Such an incident could well satisfy the requirement of diligent inquiry necessary to offset the notice of a possible interest inherent in an occupant's possession, as buyers argue. *See Shafer v. Killpack,* 53 Utah 468, 173 P. 948 (1918); *Toland v. Corey,* 6 Utah 392, 24 P. 190 (1890); *Burgess v. Independent School District No. 1,* Okl., 336 P.2d 1077 (1959). But, as noted above, the question before us is not one of notice for purposes of the recording statutes or the bona fide purchaser rule, but a question of whether the legal ownership interest of Mrs. Jensen can be barred by other means. Alternative theories such as agency or estoppel not having been pleaded or proved, we have no occasion to rule whether they could provide a sufficient basis for relief to buyers in a circumstance such as this.

Judgment affirmed. Costs to respondents.

HALL, C.J., and STEWART, HOWE and DURHAM, JJ., concur.

---

**3.** Tiffany explains the rule in this way:

As between a legal title to property and an equitable interest therein or claim thereto, the legal title, if earlier in point of time, takes priority, that is, as one who has transferred his legal title cannot affect his grantee by subsequently attempting to transfer the legal title to another, so he cannot affect his grantee by subsequently attempting to create an equitable interest in another, even though such other pays value without notice of the prior transfer of the legal title. *Id.* at § 1258.