---

Appeal from Third District.

---

## SPRATT v. PAULSON.

No. 2864.   Decided November 21, 1916.   (Motion to modify judgment denied December 29, 1916.   (161 Pac. 1120.)

1. APPEAL AND ERROR—HARMLESS ERROR—ADMISSION OF EVIDENCE—TRIAL TO THE COURT. When a cause is tried by the court, without a jury, the judgment will not be reversed for the admission of incompetent evidence if there is sufficient competent evidence to sustain the finding.[1]   (Page 13.)

2. CORPORATIONS—SALE OF CORPORATE STOCK—ACTION BY SELLER—EVIDENCE. Evidence which merely shows that defendant acquired from plaintiff stock which he had given to plaintiff as an employee of the corporation, and that he promised to pay therefor, does not support a finding that defendant promised to pay plaintiff the amount which he paid for the stock of those who had paid par for it at his solicitation.   (Page 14.)

3. SALES—ACTION BY SELLER—EXPRESS PROMISE. Where one relies upon an express promise of the buyer to pay a specific price in excess of the actual market value, he must prove that the minds of the parties met upon the particular price claimed.   (Page 16.)

4. WITNESSES—IMPEACHING EVIDENCE—JUDGMENT. In a suit to recover the price for corporate stock sold to defendant, defendant cannot be cross-examined as to a judgment rendered in another state against him and in favor of one who claimed a contract similar to plaintiff's, in order to test his credibility.   (Page 16.)

5. EVIDENCE—ADMISSIBILITY—DECLARATIONS OF AGENT—DECLARATIONS SUBSEQUENT TO TRANSACTION. Statements by defendant's agent which were made after the transaction to which they related had been completed are not admissible in an action against defendant growing out of that transaction, as res gestæ.[2]   (Page 18.)

Appeal from District Court, Third District; *Hon. Geo. G. Armstrong*, Judge.

Action by G. C. Spratt against J. P. Paulson.

Judgment for plaintiff. Defendant appeals.

---

[1] *Victoria, etc., Co.* v. *Haws*, 7 Utah 515, 27 Pac. 695.
[2] *Meyers* v. *Railroad*, 36 Utah 307, 104 Pac. 736, 21 Ann. Cas. 1229.

REVERSED AND REMANDED with directions to grant a new trial.

*Hurd & Hurd* for appellant.

*Gustin Gillette & Brayton* for respondent.

## APPELLANT'S POINTS.

The complaint alleges an express contract for the purchase of stock upon certain terms and conditions, but the only evidence offered by the plaintiff in support of such pleading was evidence tending to prove a contract implied by law, and not the express contract relied upon and put in issue by the pleadings. That such testimony is insufficient to entitle plaintiff to recover is well settled. 9 Cyc. 749; *Powder River Livestock Company* v. *Lamb,* 38 Neb. 339, 56 N. W. 1019; *Mayer* v. *VerDryck,* 46 Neb. 221, 64 N. W. 691; *Bentley* v. *Edwards* (Minn.) 125 Minn. 179, 146 N. W. 347, 51 L. R. A. (N. S.) 254.

The rule is stated as follows in 9 Cyc:

"In an action upon an express contract the plaintiff cannot recover upon proof of an implied contract. Where the plaintiff declares upon an express contract, proof of a reasonable value is not admissible under the contract."

FRICK, J.

The plaintiff brought this action against the defendant to recover the sum of $1,060, which the plaintiff alleged the defendant had agreed to pay the plaintiff for ten shares of the capital stock of a certain corporation of which both were stockholders. The defendant filed a general denial to plaintiff's complaint.

The plaintiff, at the trial, produced evidence tending to prove: That the defendant, prior to and in November, 1907, was the sole owner of certain business in Salt Lake City. That the plaintiff, who was then a young man, was then, and for a number of years had been, employed by the defendant in said business and had been promoted from time to time. That defendant's brother was the general manager of said business. That, in the month of November aforesaid, defendant, being

desirous of increasing the capital of said business, incorporated the same and induced some of the business men of Salt Lake City to subscribe for some of the stock of said corporation. That the defendant, as payment for the stock subscribed for by him, to wit, 850 shares out of a total number of 970 shares issued of the par value of $100 each, turned over all of the assets of said business to said corporation. That certain business men of Salt Lake City subscribed for 220 shares of said stock of said corporation, who, with one exception, paid $100 per share in cash therefor, while one of them paid only $500 on his subscription of twenty-five shares and remained indebted to the corporation for twenty shares at the rate of $100 per share. That defendant's brother requested and induced the plaintiff and one Bergman, another employee of the defendant, to subscribe for ten shares each. The ten shares of stock subscribed for by plaintiff, he claims, were given or donated to him, and that he was not required to pay therefor. That the defendant donated said stock to the plaintiff for the reason that he wanted plaintiff to have some substantial interest in the corporate business after it was incorporated. Plaintiff also produced evidence tending to show that, in addition to the twenty shares which were given to plaintiff and to Bergman as aforesaid, there were also five shares given to a Mr. Smith, another employee, who was not a subscriber, and in addition thereto he also received five shares for which he had to pay the par value, to wit, $500; that the twenty shares that were issued to plaintiff and to Bergman, and the ten shares received by Smith, were all charged on the books of the corporation to the defendant, so that, while defendant had subscribed for only 850 shares, he was actually charged with 880 shares on the books of the corporation; that the assets of the business turned in by the defendant did not pay for said 880 shares of stock in full, and he was indebted to the corporation as a balance due on said shares charged to him the sum of $8,879.67, which was to be and was paid for by additional merchandise furnished by the defendant to the corporation; that in February, 1910, the defendant was desirous of selling the assets and business of the corporation to a certain corporation of Chicago, and he came to Salt Lake City to

induce the local subscribers for stock as aforesaid to surrender their stock to him at par so that he might turn the same over to said corporation; that the stockholders who had paid for their stock demanded the sum of $100 plus six per cent. interest for one year, or $106 per share, for their stock; that the defendant finally agreed to and did pay to all of the Salt Lake subscribers who had paid the full par value for their stock the sum of $106 per share; and that he paid the subscriber who had paid in only $500 on his subscription of twenty-five shares the amount he had actually paid in, and all of the subscribers, including the plaintiff, then surrendered their stock to the defendant, and the same was canceled and turned over to the Chicago concern.

Up to this point there is not much conflict or dispute between the parties. In addition to the foregoing, however, the plaintiff also contends and testified that the defendant had also agreed to pay him the sum of $106 a share for the ten shares that he subscribed for and were given to him as before stated. The plaintiff concedes that the defendant had never expressly promised to pay him $106 a share, or any other specified sum for said ten shares, but he testified that the defendant, after selling out the corporate business, on his departure from Salt Lake City, "told me he would send me the money for my stock as soon as he got back to Denver." The plaintiff therefore insists the defendant had agreed to pay him $106 a share for said ten shares of stock. Upon the other hand, both the defendant and his brother, who was the general manager of defendant's business, and, after the incorporation, the general manager and treasurer of the corporation, denied that the ten shares subscribed for by the plaintiff were given or donated to him but they insist that he was expected to pay therefor, although they admitted that they had not demanded the subscription price from him at any time, and that he was paid a dividend of sixty dollars on the stock. They also deny the authority of the defendant's brother to make a gift of the stock to plaintiff, and they both testified that, when the corporate business was turned over, the plaintiff, as well as the other employees, surrendered his shares of stock to the Salt Lake corporation without demand-

ing pay therefor; that the same was turned over to the Chicago corporation; that the plaintiff, for more than two years thereafter, had never demanded pay for the stock or suggested that he was to receive anything therefor; that no subscriber received anything for his stock except what he had paid therefor with six per cent. added; and that the plaintiff had never paid anything for the stock, hence he was not entitled to anything under the arrangement made with the other subscribers. Defendant further proved that, after the business was incorporated, it lost money, and that when it was taken over by the Chicago corporation the stock was worth not to exceed fifty dollars a share; that he paid the Salt Lake subscribers the full amount they had paid for the stock for the reason that he felt morally bound to do that, because he had induced them to subscribe for the stock. There was much other testimony, some of which was admitted over the objections of the defendant, and to which we shall refer later.

The court found for the plaintiff and entered judgment for the full amount claimed, which, with legal interest, amounted to the sum of $1,481.65. The defendant appeals and has assigned numerous errors upon the admission and exclusion of evidence, and, further, that the evidenec does not support the findings, etc.

A careful reading of all the evidence produced at the trial, and of the proceedings had as the same appears from the bill of exceptions, discloses that the court was exceedingly liberal in the admission of evidence. Indeed, if the case had been tried by a jury instead of by the court, there would be no doubt respecting our duty to reverse the case upon the ground that improper evidence was admitted against the defendant over his objections and exceptions which was prejudicial to his substantial rights. In view, however, that the case was tried by the court, it is insisted by plaintiff that, although it were conceded the court erred in the particulars just stated, yet there is at least some substantial evidence in support of the material findings, and hence we may not interfere. Counsel cite and rely upon the case of *Victoria, etc., Co.* v. *Haws,* 7 Utah 515, 27 Pac. 695, where the court lays down the doctrine contended for in the following words:

"When the judge tries a case without a jury, it is not a reversible error to admit incompetent, irrelevant, or immaterial evidence; for he decides the case on the proper testimony only, and disregards entirely that which is incompetent, irrelevant, and immaterial. When the clear preponderance of competent, relevant, and material evidence supports the findings, this court will not reverse because of errors of the court below in admitting incompetent, irrelevant, or immaterial evidence, for the presumption in such case is that it was wholly disregarded."

In 46 Am. Dig. (Century Ed.), under the heal of Trial, Section 895, the doctrine, which is supported by a very large number of cases to which it is unnecessary to refer specially here, is stated thus:

"When a cause is tried by the court without a jury, the judgment will not be reversed on the ground of the admission of immaterial or incompetent evidence if sufficient proper evidence was admitted to sustain the finding."

If therefore the findings in this case are sustained by proper and competent evidence, we may not set them aside, although the court admitted improper evidence during the course of the trial. The question therefore is: Are the findings that are assailed by the defendant, and which are essential to the judgment, supported by sufficient proper evidence?

The principal issues that the plaintiff was required to prove by proper evidence were: (1) That the ten shares of stock were donated or given to him, that is, that the stock belonged to him; and (2) that the defendant had promised to pay him the sum of $106 per share therefor. Now, there is ample proper evidence in the record to support the findings that the ten shares of stock were given to the plaintiff, and that it was not intended that he should pay therefor. We shall therefore not further discuss that branch of the case. The plaintiff, however, relies upon an express promise of the defendant not only to pay plaintiff for said ten shares of stock, but he insists that the defendant expressly promised to pay him the sum of $106 per share therefor. Has the plaintiff established that express promise by competent evidence? What evidence has he produced to establish it? All the plaintiff testified to upon that subject was that "he (the defendant)

told me he was paying $106 for the stock,'' meaning the stock that was obtained from the subscribers who had paid par value of $100 a share therefor. He was then asked:

''Q. Will you answer that question, did he (the defendant) say that he would pay you that? A. No, sir. Q. No, he never did, did he? A. No, sir.''

The plaintiff conceded over and over again that the defendant had never in express terms promised to pay him any specific amount for his stock, and what he relies on to establish the express promise is that the defendant paid the subscribers who had paid par for their stock the sum of $106 per share, and that when the defendant left Salt Lake City for his home in Denver after settling with the other subscribers he told plaintiff that he would send him the money for his stock as soon as he reached Denver; and, further, that in May, 1913, after plaintiff had written a number of letters to the defendant addressed to Denver, he wrote in reply that:

''I am absolutely unable right now to help you out, but expect to arrange for some money next month and will then take the matter up with you further.''

The defendant, however, explained this statement by saying that at that time he did not know what, if any, arrangements his brother had made with the plaintiff respecting his stock, and for that reason had made the statement as quoted above. There was also much more correspondence between the parties, but it goes no farther than to show that the ten shares of stock were given to the plaintiff, and does not establish an express promise to pay a particular sum or price therefor. Now, if plaintiff had paid for his stock the same as the other subscribers had done, or if the defendant had paid the other subscribers par value for their stock plus six per cent. regardless of whether they had paid for it or not, the inference that plaintiff was to receive the same amount for his stock would be of considerable force or weight; but, as it is, and after the explanation why the Salt Lake subscribers who had paid the .par value for their stock were paid back the par value plus six per cent., which is not denied, there is nothing left upon which to base an inference of an express promise to pay a specific amount for the plaintiff's stock, but the most that can

be inferred from what the defendant had said and written would be an implied promise that he would pay plaintiff the market value of the stock or what it was actually worth.

Plaintiff's counsel seem to overlook the fact that they rely upon an, express agreement or contract to pay a specific price or sum of money for the ten shares of stock. Such a contract is not established by merely showing that the **3** defendant received the stock and agreed to pay therefor. Where one person obtains the property of another, and such other does no more than to agree to pay therefor, then, in order to prevent injustice, the law always implies a promise to pay the actual value or the market price of the property if it has a market price, and also implies that the payment was intended to be made within a reasonable time. The law, in furtherance of justice, therefore, supplies what was omitted or not expressed. Where, however, as here, one relies upon an express promise to pay a specific price which is in excess of the actual value of the property, he must prove that the minds of the parties met upon the particular price or amount claimed and that must be done by showing that the defendant, in apt words or terms, promised or agreed to pay that particular price or amount. In such a case justice does not require an implied promise, and the law does not supply any material omission, but requires the promise to be established by proper evidence. While it may not be necessary to prove the precise words constituting the promise, yet it must be made to appear from what was said and done that an express promise or agreement to pay the particular price demanded was made, and that the minds met upon that proposition.

There is abundant evidence in the record to support a finding that the defendant is liable to the plaintiff for the actual value of his stock at the time it was surrendered by the plaintiff in February, 1910; but, in view of all the circumstances disclosed by the evidence, there is not sufficient evidence to support a finding of an express promise to pay the plaintiff any specific sum or price for his stock.

Plaintiff's counsel, in recognition of the weakness of the evidence upon that point, undertook to prove that Mr. Bergman was precisely in the same situation respecting        **4**

his stock that the plaintiff was; that Mr. Bergman, like plaintiff, had been promised pay for his stock; and that when the defendant failed or refused to pay Mr. Bergman he commenced an action in the courts of Colorado to recover the sum of $106 per share for the stock, and Bergman had recovered judgment against the defendant in the courts of Colorado for the full amount he claimed for his stock, to wit, $106 a share. When plaintiff's counsel first attempted to prove that Bergman had obtained such a judgment, defendant's counsel objected, and the objection was sustained. When the defendant took the stand, however, in his own behalf, on cross-examination, over the objection and exception of his counsel, he was by the court compelled to testify that Bergman had obtained a judgment against him for between $1,400 and $1,500 in the courts of Colorado for his stock. Defendant's counsel vigorously contend that the evidence was improper, and that its admission constitutes prejudicial error. To state that the judgment under the circumstances of this case was not proper evidence to establish any material or substantive fact or facts in issue between the plaintiff and the defendant is merely to state the obvious. Counsel for plaintiff, however, suggest that evidence regarding the judgment was merely offered and admitted as affecting the credibility of defendant's testimony. When plaintiff's counsel first offered to prove that Mr. Bergman had obtained a judgment, counsel said: "It would be interesting to know what a jury thought of a contract like the one sued on." Now, however, it is suggested that the judgment was offered and admitted to test the credibility of the defendant. But how was it proper for that purpose? Of course, it always is proper to show that a party has made statements, or admissions, or denials contrary to his present testimony; but how is a judgment that is entered against him without his consent and against his will to be construed an admission or a statement made by him? If the judgment had established the status of either party to the action and that status was material in this case, the judgment would be proper evidence to prove that. That judgment was, however, not proper as substantive evidence to prove any material fact in issue between the plaintiff and the defendant in this case.

Now, for the reasons stated, was it proper evidence to test the credibility of defendant's testimony. In either view, therefore, the court erred in admitting proof of the judgment.

It is, however, also insisted by defendant's counsel that the court erred in admitting certain declarations or statements made by defendant's brother, who, it was claimed, was the agent of the defendant. In that regard it is contended that the declarations or statements were made by defendant's brother as the general manager of the corporation, and not as the agent of the defendant. Moreover, it is insisted that some of the declarations relied on and admitted over defendant's objections were made at a time after the transactions had been fully consummated, and hence were not part of the *res gestae*, and for that reason were not proper evidence against the defendant. In answer to the first objection, it was made to appear by a witness who testified he knew that defendant's brother "was the authorized agent for his brother," the defendant, at the time of the transactions and when the statements referred to by counsel were made. With regard to the second proposition it is true that the court permitted plaintiff to testify to some statements attributed to defendant's brother which were made long after the transactions or business referred to had ended, and hence such statements were not part of the *res gestae,* and were not made in the course of the business transacted, and for that reason were not proper under the rule laid down by this court in the case of *Meyers* v. *Railroad,* 36 Utah 307, 104 Pac. 736, 21 Ann. Cas. 1229. See, also, upon this point, 2 Jones, Comms. Ev. Section 255, and 1 Elliott, Ev. Section 252. The statements last referred to were, however, not of such character as to prejudice the defendant, and hence, although the court erred in admitting them, we should not reverse the judgment upon that ground alone. As we have already remarked, however, the court was extremely liberal in admitting evidence, and both parties were frequently permitted to go beyond the rules of evidence.

We desire to add that we do not wish to be understood by anything we have said as holding that the actual value of plaintiff's stock was fifty dollars a share, or any other sum.

We referred to that matter only because the defendant testi-
fied that the stock was worth not exceeding that amount when
he settled with the stockholders, and his testimony as to that
was not disputed. In view that the plaintiff has failed to prove
an express agreement on the part of the defendant to pay
$106 a share for the stock in question, but has proved that the
defendant did agree to pay him for the stock, the question of
the market or actual value thereof at the time it was sur-
rendered by the plaintiff, or when he agreed to surrender it
to the defendant, is an open question upon which both parties
have a right to be heard. Moreover, we think that under the
allegations of the complaint the plaintiff is entitled to recover
the market or actual value of the stock; but for the reasons
stated he cannot, as the evidence now stands, recover $106 a
share upon an express agreement to that effect.

For the reasons stated, the judgment is reversed, and the
cause is remanded to the District Court of Salt Lake County,
with directions to grant a new trial. Costs to appellant.

STRAUP, C. J., and McCARTY, J., concur.