## PETERSON v. RICHARDS.

No. 4610.   Decided November 10, 1928.   (272 P. 229.)

*Bagley, Judd & Ray*, of Salt Lake City, for appellant.

*Willard Hanson and A. H. Hougaard*, both of Salt Lake City, for respondent.

STRAUP, J.

This is an action brought by the plaintiff and respondent against the defendant and appellant to recover damages for injuries sustained by her through the alleged negligence of the defendant. In her complaint it is alleged that the defendant, a physician and surgeon, was employed to perform and performed on her an abdominal operation at a hospital in Salt Lake City; that an anesthetic was administered to her rendering her unconscious and insensible; that while she was on the operating table and in such condition the defendant, in the course of the operation, performed, directed, and controlled by him, negligently operated or caused the operating table to be so manipulated and adjusted that her hand and fingers were negligently and carelessly permitted to fall or come in openings or breaks in the table caused by manipulations of it, and the table so manipulated and adjusted that her hand and fingers were caught therein, pinched, crushed, and permanently injured.

The defendant denied the alleged negligence and denied that the plaintiff sustained any injury whatever to her hand or fingers on the operating table or through its manipulation, or in the course of the operation, or in the operating room, or that the table could be or that it was so manipulated or adjusted that her hand or fingers could be or that they were caught in the table or injured; and averred that if the plaintiff's hand or fingers were injured while in the hospital, they were hurt or injured, not on or about the operating table or in the operating room, but in other parts of the hospital over which he had no direction or control.

The case was tried to a jury, who rendered a verdict in favor of the plaintiff in the sum of $8,000. This on defendant's motion for a new trial was reduced by the court

to $5,000 and the motion overruled, provided the plaintiff remitted the excess, which she did.  The defendant appeals. He assigns as error the overruling of his motion for a directed verdict on the ground of insufficiency of the evidence; in excluding, on plaintiff's objections, certain evidence offered by the defendant; in refusing to charge as requested by him; and in charging the jury in particulars excepted to by him.

That the plaintiff's fingers while she was in the hospital, and was under the influence of the anesthetic, were from some cause injured by having been pinched or crushed between metallic or other hard material of some kind, is not disputed.  In such respect the evidence, without dispute, shows that when the plaintiff in her room in the hospital was being prepared for the operation and taken therefrom to the operating rooms several floors above, her hand and fingers were uninjured and in a normal condition, and that they were not injured on the way to the operating room and were not in an injured condition when she was placed on the operating table; that the operation took about 1 hour and 45 minutes, during which time the plaintiff was completely under the influence of the anesthetic; that after the operation was completed, and while she still was under the influence of the anesthetic, she was taken from the operating room to her room below and placed in bed, and that not anything occurred on the way to injure her fingers or by which her fingers or hand could have been injured; that about three-fourths of an hour after the operation and after she had been placed in bed and was coming out of the influence of the anesthetic, she exclaimed, "Oh, my poor hand," and complained of pain in her hand.  Upon an examination made of it by the nurse and others present, it was found that her fingers had been freshly pinched and crushed.  It is conceded by both parties that to hold the defendant liable it, among other things, was necessary to show that plaintiff's fingers were injured in the operating room and in the course of the operation, and if they were injured

64

elsewhere in the hospital, either in taking the plaintiff to or from the operating room, or in her room after the operation, the defendant was not liable. It was the theory of the plaintiff, and it so was alleged in her complaint, that her fingers were injured by manipulations or adjustments of the operating table in the course of the operation and while she was completely under the influence of the anesthetic. Evidence was given to show that there was no instrumentality or object in the operating room by or through which her fingers could have been injured, except the operating table, and that not anything occurred in the operating room whereby plaintiff's fingers could have been injured, except by manipulations or adjustments of the table. There is no direct evidence to show that her hand or fingers were caught in the table or that they were injured by manipulations or adjustments of it. That is to say, no witness testified that he saw plaintiff's fingers caught in or about the table, or saw them pinched or injured by its manipulation or adjustment. All that rests upon inferences, and on admissions which the plaintiff and her husband testified were afterwards made by the defendant, but denied by him.

The record shows that the defendant is one of the most competent and skilled surgeons in the state and of much experience and practice. In the operation he was assisted by two other competent surgeons and by attending nurses, one of whom was in his employ and was skilled and experienced in administering anesthetics and who administered the anesthetic to the plaintiff. The operating room, including the operating table, was maintained and furnished by the hospital. The defendant had no direction or control over the wards or rooms or other parts of the hospital, nor of the nurses or attendants about the hospital. He, in common with other physicians and surgeons, was permitted to bring patients to the hospital and there operate on them and treat them. The plaintiff was taken to the hospital under such circumstances. She independently of the employment

of the defendant was to pay and paid all hospital charges. The defendant was employed merely to do the operation. He had full charge and control of that, and gave all the directions and orders with respect thereto, including whatever manipulations or adjustments were made of the operating table. There were what is spoken of as two major abdominal operations to be performed, one on the uterus and another on other female organs of the plaintiff, requiring a large incision in the abdominal cavity and a lower midline incision. These were performed by the defendant himself, assisted by the other surgeons. There were two minor operations to be performed, the removal of a mole on the inner thigh and a mole on the shoulder or upper arm of the plaintiff. These, under the direction of the defendant, were performed by the assistant surgeons. The major operations were first performed by the defendant and then the minor operations by his assistants. There is some dispute in the evidence as to whether the minor operations were or were not performed before the major operations were fully completed and the incisions sewn up. The plaintiff's husband, who was present at the operation, testified that while the defendant was sewing up the incisions, the two assistants removed the moles. But the defendant and the other surgeons testified that the moles were not removed until the incisions had been sewn up and the abdomen covered with bandages of antiseptic solutions. The operating table on which the operations were performed was one of late improvements installed by the hospital three or four weeks prior to the operation, but was one with which the defendant was familiar, as were also his assistants and the other attendants at the operation. The table was so constructed as to permit the center of the top of it, on which the plaintiff was lain, to be raised and lowered, to better facilitate, among others, the kind of major operations performed by the defendant, and in performing them the table was raised and lowered for such purpose. It, of course, is the contention of the plaintiff that in so raising and lower-

ing the table, her fingers were caught and pinched and crushed. Her husband, who was present during the operation, did not testify that he saw her fingers caught in the table, or saw them hurt in such or in any manner, and testified he had no knowledge that her fingers had been injured, until after she had been removed from the operating room to her room below in the hospital and about three-fourths of an hour thereafter when she came out of the influence of the anesthetic and complained of pain in her fingers; and that upon an examination then made of them by the attending nurse and others it was discovered that plaintiff's fingers had been freshly pinched and crushed. He further testified that when the major operations were being performed, plaintiff's hands were held in straps fastened to the table; that the center of the top of the table was raised and manipulated while such operations were being performed, causing an opening or break in that part of the table; that while the table was in such position the defendant sewed up the incisions made by him, and while he was doing that he directed his assistants to remove the moles; that one of them did not readily locate the mole on the shoulder or arm, and in looking for it he partly turned over the body of the plaintiff and removed both hands from the straps and left them lying by her side; and that when the moles had been removed and the incisions sewn up and the operations completed, the table was straightened up, which caused the break or opening in the table to close and the two metal ends to press against each other; that at that time, without giving any reason therefor, he was asked to step out of the room for a minute, and on being out but a few seconds he was asked to return, and on his return the plaintiff was being lifted from the table onto the stretcher to be taken from the operating room to her room below. He further testified that when he was in the operating room during the operations he was not in a position to see plaintiff's hands at all times and in effect paid no particular attention to them.

The operating table was by the defendant exhibited in the courtroom to the court and jury. With it he exhibited to the jury the different positions in which the table was placed in performing the operations, and testified that with such manipulations or adjustments plaintiff's fingers could not have been caught in any break or opening in the table, and that the table was not manipulated or adjusted in any manner whereby plaintiff's fingers could have been caught in the table, and testified that her fingers were not caught in the table, or in any particular pinched or injured in the operation, or in the operating room. His testimony was corroborated by the two assistant surgeons and by the nurse administering the anesthetic. It was testified to by the defendant and the assistant surgeons and by some of the nurses in attendance that they, during the operation, observed or handled plaintiff's hands, and that neither her hand nor her fingers were in any manner hurt or injured in the course of the operation and were not in an injured condition when the plaintiff was removed from the operating room and taken to her room below. The defendant, however, further testified that certain openings or breaks could be caused by manipulations or adjustments of the table whereby a patient's fingers, if permitted to be or come in such openings or breaks and the table straightened out while the fingers were in such position, could be pinched and hurt. But he testified further that the table was not manipulated or adjusted in any such manner or in any manner whereby plaintiff's fingers could have been caught in any opening or break and pinched by straightening the table up or by otherwise manipulating it. The defendant further testified that he had no knowledge that the plaintiff had sustained any injury to her hand or fingers until the next morning when he visited the plaintiff at the hospital. The assistant surgeons testified they also had no knowledge of any injury sustained by the plaintiff until the next day after the operation. The defendant and the assistant surgeons testified that they the next day after the operation, and on

being told that the husband of the plaintiff and her family thought or claimed that plaintiff's fingers had been crushed in the operating table, placed a person on the table as the plaintiff was placed thereon during the operation, and manipulated and adjusted the table as it was manipulated and adjusted during the operation, and on such investigation and experiment found, as they testified, that plaintiff's hand or fingers could not have been hurt or injured in such manner, or from such a cause.

While the defendant and his assistants and the nurses attending the operation testified that plaintiff's hand or fingers were not injured on or by the operating table or through its manipulation or adjustment, and were positive that her hand or fingers were not hurt in the operating room, yet they in no manner undertook to account for or explain how the fresh injury to her fingers could have happened, except a theory advanced by the defendant as to how plaintiff's fingers could have been pinched and injured in her room after she was removed from the operating room and while she still was under the influence of the anesthetic. In such respect it was explained that the bed, on which the plaintiff after the operation was placed, was adjustable, that the head of it was so constructed that it could be raised and lowered; and it was testified to that the defendant, among other things, gave directions to the nurse that when the plaintiff, after the operation, was removed to her room, the bed be raised a notch. The bed was also exhibited in the courtroom to the court and jury, and was by the defendant and other witnesses manipulated and exhibited to show how plaintiff's fingers, while she was still under the influence of the anesthetic, could have been caught in parts of the bed and pinched and injured and such an injury produced as suffered by her. But no witness testified that her fingers were injured in such manner, or from such a cause. Plaintiff's husband and her mother testified that they were in plaintiff's room all the time, from the time she was removed therein after the operation and up to the time she

came out of the influence of the anesthetic and complained of pain in her hand—but that was disputed by one of the nurses, who testified that they were not in the room at the beginning—and that during such time plaintiff's hands were under cover and not in such position that her fingers could have been caught in any part of the bed because of any adjustment or manipulation of it. Neither did the nurse, attending the plaintiff and who was in and out of the room, testify that plaintiff's hand or fingers were injured in any such manner or that her hand or fingers were so exposed that they could have been injured from such a cause.

The defendant, in visiting and treating the plaintiff at the hospital after the operation, also treated her for the injury to her fingers. She testified that on such occasions she asked the defendant how her fingers were injured, and that he gave her no direct answer. The husband testified that about three weeks after the operation he called on the defendant at his office and inquired if he thought the plaintiff was in a condition to leave the hospital at that time and go to her home in Levan, Utah, and inquired what he owed the defendant; that the defendant advised him that the plaintiff could then leave the hospital and go home, and instructed him as to home treatments and care of the fingers, and directed him to bring the plaintiff once or twice a week to his office, where he could continue with the treatment; that the defendant then stated that he did not know just what to say as to the amount of his bill for his services; that he was sorry about the condition of plaintiff's hand; that the operating table had many complications and adjustments, but that his assistants and nurses were thoroughly trained on it, but for some reason or other we crushed her hand; I don't know what to say about it; but the bill will be $150.00 which is a considerable cut-off due to the fact that we crushed her hand." The plaintiff and her husband further testified that several weeks after the plaintiff had left the hospital, and on an occasion when they had

come from Levan and called at the defendant's office, and upon his examination of her fingers, he advised that X-ray treatments would be beneficial, and that he thereupon in their presence called up by telephone a doctor in Salt Lake City giving such treatments, and said to him:

"I have a patient here with me now that I am sending down to you if you can treat her now; she has an abdominal incision and also a hand that was crushed in the operating table."

The plaintiff, with her husband, went to the X-ray doctor, and she there took one treatment. The husband of the plaintiff further testified that about a month or two after that, or about three months after the operation, he met the defendant at the hospital when the defendant inquired how plaintiff's fingers were getting along, that the husband told him about the same, and that they then talked about the condition of plaintiff's hand; that finally the husband asked the defendant if he had talked with "Hanson [plaintiff's counsel in the case] about it." The defendant replied that he had not, and asked the husband if he had turned the case over to Hanson. The husband replied that he had, but had not yet "signed up any papers." The defendant asked him if he thought that was fair, and in further talking about the matter the defendant said:

'I do admit that we injured her hand in the operating room, but as far as money is concerned I do not care at all about the money because the insurance company has to take care of that, but it is the publicity part of it that I don't like."

Parts of these conversations were admitted and parts denied by the defendant in his testimony. He, however, denied making any admission or statement that plaintiff's hand or fingers were injured on the operating table or in the operating room, and testified that what he admitted was that plaintiff's fingers were in some manner injured in the hospital, but not on or about the operating table or in the operating room; that instead of saying he did not care any-

thing about the money part, or that the insurance company would take care of that, he said he was not worrying about any lawsuit because he was not responsible for the injury; that he told plaintiff's husband he reduced the fee for services, not because plaintiff's hand was injured on or by the table or in the operating room, because she was in the hospital longer than was expected; and what he said to the X-ray doctor over the telephone was that his patient, Mrs. Peterson, needed some X-ray treatments, that she had a keloid or abdominal scar and also had a keloid on three fingers which needed some exposures, and that "the fingers were supposed to have been crushed in the operating room," but testified that by such statement he did not mean he had supposed the fingers had been crushed or hurt in the operating room, that he knew they had not been, that the plaintiff and her husband had supposed that; that such was their supposition, not his.

Upon this evidence it is the contention that the plaintiff failed to prove that her fingers were injured on or about the operating table or while she was being operated on and as in her complaint alleged; that on the evidence it is mere conjecture or speculation that her fingers were injured in such manner; that on the evidence it is just as probable that the injury occurred through manipulations or adjustments of the bed after the plaintiff was removed from the operating room as through manipulations or adjustments of the operating table, and that in such situation of equal probabilities, or equal probable causes, one for which the defendant might be responsible and the other not, the case ought to have been withheld from the jury. It is not contended that if the evidence is sufficient to justify a finding that plaintiff's fingers were injured through manipulations or adjustments of the operating table in the course of the operation, it is insufficient to show negligence either on the part of the defendant, or of one or the other of the assistant surgeons or of another attendant manipulating or adjusting the table under the orders and directions of the defendant.

Counsel for the defendant rather present and argue the proposition on the assumption that if the evidence is sufficient to justify a finding that plaintiff's fingers were injured through manipulations or adjustments of the operating table, it also is sufficient to show negligence. What they urge is that the evidence is not sufficient to show that the fingers were injured in such manner; that the plaintiff failed to show "what happened to her, when it happened, or how it happened," which resulted in injury to her fingers.

On the evidence adduced on behalf of the plaintiff herself, it is not reasonably inferable that her injury resulted through manipulations or adjustments of the bed. Whatever inference in such particular, if any, may be deduced, comes from the defendant's evidence. The plaintiff, of course, was required to adduce sufficient evidence to justify a finding that her fingers were injured through manipulations or adjustments of the operating table and as in her complaint alleged. It is not claimed that she was required to prove that by direct or positive evidence or by the testimony of some one who actually saw the fingers pinched or hurt in such manner. It is enough if facts and circumstances are proven which reasonably point to the inference that her fingers were injured in such manner and which are consistent therewith and not equally consistent with an inference that they were injured in some other manner. Looking at the facts and circumstances as adduced by the plaintiff, together with her testimony and that of her husband as to the admissions of the defendant as testified to by them, the weight or credibility of which we may not determine, we think there was sufficient evidence to require the case to be submitted to the jury. True, the defendant denied the admissions, and he and his witnesses attending the operation gave rather direct and positive evidence that plaintiff's fingers were not injured on or about the operating table or in the operating room. However persuasive such evidence may be regarded as a matter of fact, yet it cannot be said that it, as a matter of law, so dissipated that

of the plaintiff's as to leave not anything for the jury to determine, especially in view of the testimony as to the defendant's admissions, which, if believed by the jury, were themselves sufficient to justify a finding that plaintiff's fingers were injured through manipulations or adjustments of the table. 3 Jones, Comms. on Evidence, § 1072. The admissions as testified to were not of such character as where a party making them had not knowledge of the facts declared, or where they were declared only upon what others may have told him. The fact here declared by the defendant as testified to by the plaintiff and her husband related to a matter or transaction concerning which the defendant at least presumptively had knowledge.

It is urged the case is within the rule announced in the cases of *Tremelling* v. *S. P. Co.*, 51 Utah 189, 170 P. 80; *Reid* v. *S. P. L. A. & S. L. R. Co.*, 39 Utah 617, 118 P. 1009, and other cases, where it in effect is stated that the plaintiff to sustain his cause must prove more than a mere conjecture or probability that the injury occurred as alleged by him; and that where the plaintiff seeks to prove an allegation essential to his cause only by an inference or inferences sought to be deduced from proven facts and circumstances, and the evidence so adduced by him with equal force points to several inferences or causes, one of which rendering the defendant liable and the other or others not, the plaintiff has not sustained his cause by sufficient evidence. Such is but familiar doctrine and upon which the rule of indirect or circumstantial evidence is founded. But it here has no application, for on the theory of plaintiff's cause and upon the evidence adduced by her, though indirect or circumstantial in character, whatever inference or inferences may be deduced therefrom point in but one direction and are consistent only with the inference or inferences that plaintiff's fingers were injured at or about the operating table. Whatever inference or inferences, if any, may be deduced that the injury occurred in some other way or by manipulations or adjustments of the bed,

are to be deduced from facts and circumstances shown by the defendant and not by the plaintiff. The defendant did not by any direct or positive evidence show that plaintiff's fingers were injured by manipulations or adjustments of the bed. He but sought such an inference to be deduced from facts and circumstances proven by him and from manipulations of the bed before the jury. Of course, throughout the case, the plaintiff had the burden of proving by a fair preponderance or greater weight of the evidence that the injury occurred as alleged by her. Whether on all of the evidence she sustained that burden was on the record a question for the jury. It is not within our province to determine whether the injury occurred in the one way or the other, or whether it is even more probable that it occurred the one way rather than the other. We may only determine whether there is sufficient evidence, if believed by the jury, to justify or warrant a finding that the injury occurred as alleged by the plantiff. We think the case, on the evidence, does not come within the rule contended for by the defendant. *James* v. *Robertson*, 39 Utah 414, 117 P. 1068. We are therefore of the opinion that the motion for a directed verdict was properly overruled.

A day or two after the operation, when the defendant with others made experiments with the operating table to ascertain if plaintiff's fingers could have been injured through the manipulations and adjustments which were made in the course of the operation, and finding, as they testified, that they could not have been so injured, the defendant on the same day in his own handwriting, as to plaintiff's injury to the fingers, noted on the hospital record this:

"Oct. 23rd. Left hand. Three fingers pinched. Red. Slight edema. Cause unknown. No bone involvement. Wet dressing. [Signed] R. T. R."

The record in such particular was offered in evidence by the defendant in his case in chief. The offer, on plaintiff's objection that the evidence was hearsay and self-serving,

was excluded. The ruling is assigned as error. The material part of the record of which the defendant sought to avail himself is the notation that the "cause" of the injury to the fingers was "unknown." It is not claimed by the defendant that he was entitled to the evidence as primary or substantive evidence, as primary evidence of the fact so noted or declared. What he claims for it is that the plaintiff having adduced evidence of admissions made by the defendant that plaintiff's fingers were injured through manipulations of the operating table, and the defendant by his testimony having denied making such admissions and having testified that her fingers were not injured in such manner, he, as corroboration of his testimony, was entitled to show that he prior to such claimed admissions, on the next day after the operation, declared or asserted that the cause of plaintiff's injury to her fingers was unknown. In other words, the defendant, a day or two after the operation, having with others, experimented with the operating table and finding, as he testified, that plaintiff's injury was not caused by or through manipulations or adjustments of the table, and he on that day having noted on the hospital record that the cause of plaintiff's injury to her fingers was unknown, it is urged that it is highly improbable that the defendant, weeks and months thereafter, admitted that plaintiff's hand or fingers were crushed or injured on or by the operating table, and hence such notation corroborated his testimony that the fingers were not hurt or injured in any such manner. The defendant, of course, concedes that the general rule is that self-serving statements of a litigant are inadmissible and ordinarily may not be received to corroborate his testimony. He, however, urges that there are recognized exceptions to the rule, and, as declared in some jurisdictions, that after an attempt has been made to impeach a witness, or to discredit his testimony by showing that he previously had made extrajudicial statements inconsistent with his testimony, or where a claim was made that his testimony was of recent fabrication, or his motive in

giving the testimony impugned, proof may be received that the witness on a prior occasion or occasions declared or affirmed the same thing as testified to by him. Cases are cited by the defendant supporting such a rule. The cases and authorities on the subject, however, are not harmonious. In 5 Chamberlayne on Evidence, § 3761, the author approves the rule. In 6 Jones, Comms. on Evidence, § 2458, the author in effect disapproves it and says it is not the weight of authority. In 2 Elliott on Evidence, § 994, the author says the authorities on the subject are about equally divided; but he observes that in all events when no attempt at impeachment has been made, the former consistent statements are not to be received in corroboration. In 8 Ann. Cas. 477 and in 41 L. R. A. (N. S.) 857, the subject is annotated. Upon the cases there collated the annotators say the weight of authority is against the rule. In *Silva* v. *Pickard*, 10 Utah 78, 37 P. 86, evidence of prior consonant declarations of a witness were held improperly received because, as there stated, at the time of the consonant statements the interest of the declarant was being served by the making of them and that the declarant then was subject to disturbing influences. In *Ewing* v. *Keith*, 16 Utah 312, 52 P. 4, evidence of prior consonant statements was held properly rejected upon substantially the same grounds and for the same reasons stated in *Silva* v. *Pickard*. Still, in these cases language is employed which in a way recognizes that there are instances where prior consonant statements of a witness may be received in evidence in corroboration of his testimony after an attempt has been made to impeach the witness or to discredit him or to impugn his motives, but that such evidence is to be received with caution and within narrow limitations. The defendant rather concedes that such cases do not to any great extent support his contention. There are other cases from this jurisdiction cited by the respondent as being against the rule contended for by the defendant. *White* v. *Pease*, 15 Utah 170, 49 P. 416; *Jensen* v. *McCornick*, 20 Utah 355, 58 P. 834; *Muldoon* v. *Brown*,

21 Utah 121, 59 P. 720; *Salt Lake City Brewing Co.* v. *Hawke*, 24 Utah 199, 66 P. 1058; *Lumm* v. *Howells*, 27 Utah 80, 74 P. 432; *Connell* v. *O. S. L. R. Co.*, 51 Utah 26, 168 P. 337; *Spratt* v. *Paulson*, 49 Utah 9, 161 P. 1120. But they have no pertinency to the matter in hand.

We find it unnecessary to decide now whether the weight of judicial authority supports or is against the rule contended for by the defendant, or when prior consonant statements of a witness may or may not be received in corroboration of his testimony after an attempt to impeach or discredit him has been made, for the reason that here no attempt was made to impeach the witness or to discredit him, or to impugn his motive, nor was there any claim made that the testimony of the witness was of recent fabrication. The evidence which the plaintiff adduced as to the admissions of the defendant was not adduced nor received to impeach the defendant, nor to discredit him, nor merely to affect his credibility. It was adduced and was received quite to the contrary, and as all admissions of a litigant as to a material fact are adduced and received, for the purpose of establishing the truth of the statements made or the existence of a fact to which they relate, and on the theory that what a party, as to a matter of fact, has voluntarily admitted to be true, may reasonably be taken as true, especially as to a matter adverse to him, for presumptively a party ordinarily does not admit as true that which is against him unless it is true. And of such probative effect are admissions of matters of fact of a party generally regarded when adverse or disserving and voluntarily made, as to make a prima facie case to the extent of the subject-matter of the admission, and to dispense with other proof of the fact so admitted and is sufficient to support a finding of fact resting alone upon such extrajudicial admission of a party. 3 Jones, Comms. on Evidence, § 1072. Thus, evidence of admissions of a party adduced by his adversary in his case in chief, and as a part of it, is received as substantive evidence, as primary evidence of the fact admitted, and

not merely to impeach or discredit the testimony of the declarant. When a party against whom evidence of an admission has been received thereafter by his testimony denies the admission, such but raises a conflict in the evidence as to whether the admission was or was not made. But in such case it may not be said that the party against whom evidence of his admission was received was impeached, or discredited, because he by his testimony denied making the admission. To say the contrary is to say that mere conflicts of evidence or testimony constitute impeachments of the respective witnesses. In such respect admissions of a party stand on a somewhat different basis than mere inconsistent extrajudicial and prior statements, for admissions of a party are received as substantive or primary evidence of the fact declared, while inconsistent statements are received only as affecting the credibility of a witness and the weight of his testimony, and not as evidence of the fact declared by the inconsistent statement.

We thus are of the opinion that the proffered evidence of the defendant was not within the rule even as contended by him and that it was properly excluded. And if the consonant prior statements in the cases of *Silva* v. *Pickard* and *Ewing* v. *Keith* were properly excluded on the grounds there stated, that the "statements were made * * * at a time" when the declarant's "own interest was being served by the making of such statements," and when the declarant was "subject to disturbing influences, and when the ultimate effect and operation arising from a change of circumstances could have been, and probably was, foreseen," we think it follows that the consonant prior statement here was properly excluded, for, when the defendant with others made the experiments with the operating table to see whether plaintiff's fingers could have been injured by manipulations or adjustments of it, and when he made the notation on the hospital record, the defendant then had been told that the husband of the plaintiff and her family

claimed or thought that her fingers had been crushed in the operating table.

Now, as to the complaints of rulings relating to the instructions: The defendant requested the court to charge:

"No. 9. In order to find a .verdict in favor of the plaintiff and against the defendant in this case it is not sufficient for the plaintiff to show, or for the jury to believe, merely that the injury to plaintiff's fingers might or could have occurred on the operating table. A jury's verdict cannot be based upon conjecture, surmise, guess or mere possibilities. If from all the evidence in this case the jury believe that plaintiff's fingers may have been pinched or injured in the hospital in some other way than in the operating table, your verdict must be in favor of the defendant and against the plaintiff, no cause of action."

"No. 9A. You may not decide this case on a question of probabilities or reach your verdict by simply weighing the probabilities, as to whether plaintiff's fingers were injured in one place or another; and the court instructs you that a verdict may not be rendered against the defendant in this case on the mere guess that he injured the plaintiff's fingers because of a probability among other probabilities that the accident might have happened in that way."

"No. 9B. You are instructed that where one person sues another alleging that his negligence caused the accident, but the jury believes that it is made to appear from the evidence that the accident may have been caused by one of two or several causes, and that the defendant is responsible for only one of them, then the burden is on the plaintiff to show that the accident was produced by the cause for which the defendant is responsible, and in case of a failure to establish such fact the plaintiff cannot recover. And if the jury believes that the probabilities are equally balanced that the accident may have been produced by a cause for which the defendant is not responsible or by one for which he is, the plaintiff cannot recover."

The requests in such language were not given. Complaint is made of that. It may be conceded that the requests in substance are not objectionable. However, we think the court gave the jury sufficient directions to properly protect the rights of the defendant in such particulars. The court, in such respect, among other things, charged:

"4. You are instructed that the mere fact that an accident happened to the plaintiff in said hospital and her fingers were injured is

not sufficient proof to entitle her to a verdict against the defendant; and in this case for the plaintiff to recover the burden is on her to establish by a preponderance of the evidence that the defendant was guilty of some one or more of the acts of negligence alleged in the complaint as negligence, and that such negligence was the direct and proximate cause of the injuries complained of. The presumption of law, in the absence of evidence to the contrary, is that the defendant was not negligent, and unless the jury believe from a preponderance of the evidence that the defendant was guilty of the negligence charged in the complaint, then your vedict must be in favor of the defendant, no cause of action.

"You are instructed that if you find that the weight of the evidence upon the question of the defendant's negligence is in favor of the defendant, or that it is equally balanced, your verdict should be in favor of the defendant, no cause of action."

"11. You are instructed that in order to defeat the plaintiff's case the defendant is not required to produce evidence to show where the injury to plaintiff's fingers occurred or where or how the accident happened to her. The plaintiff must show by a preponderance of all the evidence that the injury to her fingers occurred on said operating table. You are instructed that if you find from the evidence that the injury to plaintiff's fingers occurred in any other place than on said operating table, or in any other way than as claimed by the plaintiff in her complaint, then your verdict must be in favor of the defendant, no cause of action."

"12. Where an independent surgeon operates on a patient in a general hospital—such as the L. D. S. Hospital, where the patient contracts with and pays the hospital for the care and after-treatment—you are instructed that such surgeon is not liable and cannot be held responsible for an accident due to any act or negligence of nurses regularly employed and furnished by such hospital while they are performing some service which the hospital has undertaken to render after the operation; nor can such surgeon be held responsible for any injury occurring in the patient's room after the operation which may be caused by equipment provided by the hospital."

"13. You are instructed that it is the imperative and sworn duty of the jury to hear and determine this case solely on the testimony of the witnesses given on the trial. In determining questions of fact you are not at liberty to indulge in conjectures not based on evidence introduced in this case. Nor are you at liberty to follow your own ideas of what the law is or ought to be. On the contrary, you should look solely to the evidence for the facts, and to the instructions given you

by the court for the law, and return a verdict according to the facts established by the evidence and the law as laid down by the court."

By these instructions it will be seen the jury were given to understand that their verdict could not be based on mere conjecture or probabilities, and that it had to be based upon the evidence; that to entitle the plaintiff to recover the burden was on her to establish by a preponderance of all of the evidence that the injury to her fingers "occurred on said operating table"; that if the jury found that it occurred in any other place or in a way other than as claimed by the plaintiff in her complaint, the verdict had to be for the defendant; that the jury was directed that unless they believed from a preponderance of the evidence that the defendant was guilty of the negligence charged in the complaint, or if they found that it preponderated in favor of the defendant, or if the evidence with respect thereto was evenly balanced, the verdict had to be for the defendant; and in effect the court charged that the defendant was not responsible for an accident due to any act or negligence of nurses regularly employed and furnished by the hospital while performing services which the hospital had undertaken to render after the operation, and that the defendant could not be held responsible "for any injury occurring in the patient's room after the operation which may be caused by equipment provided by the hospital." We thus think the rights of the defendant with respect to the substance of his requests were as fully protected by the charge as they would have been had the requests been given in the language requested, and in some particulars the requests were merely abstract, while by the charge the jury were specifically directed that to entitle the plaintiff to recover she was required to show by a preponderance of all the evidence that the injury occurred on the operating table, and if it occurred at any other place after the operation, the plaintiff was not entitled to recover.

Complaint also is made that the court did not charge the jury on the defendant's theory of the case. His theory main-

ly was a general denial, and partly that plaintiff's injury could have occurred in her room in the hospital after the operation, not that it in fact did occur there, but that it was as probable that it occurred there as in the operating room. As is seen by the charge the jury, before they could find a verdict for the plaintiff, were required to find from a preponderance of all the evidence that the injury occurred on the operating table, and were directed that if it occurred elsewhere or in any other way the defendant was not responsible. The defendant proposed 12 requests to charge on different features of the case. They were all given in substance. True, complaint is made as to some modifications made of them by the court, but it is quite clear that the essence of them was not modified but given. We thus think this assignment is not well founded.

Complaint also is made of portions of the charge not given at the request of the defendant. There was evidence to show that the defendant in the course of the major operations shifted plaintiff's body on the table in different positions and in so doing took plaintiff's hands out of the strap but replaced them; that one of the assistant surgeons, while looking for the mole on plaintiff's shoulder or arm, partly turned her body over and took her hands out of the strap while the operating table was raised in the center causing a break in it, and did not replace plaintiff's hands in the strap; and that after the operations were completed the table was straightened up while plaintiff's hands were not in the strap. Among other things, the court charged the jury that if they found that the defendant directed the assistant to remove the mole, and if the assistant, "in making an examination to locate and remove said mole, was guilty of negligence, as herein defined, in removing plaintiff's hand from the strap or cuff in which it was fastened, if you find that he did remove the hand from said fastenings, and in his care and conduct with reference to said arm and hand after the same had been so removed, then you are instructed that if you find that" the assistant

"was negligent in any manner pertaining to his care and conduct toward plaintiff's arm and hand, that such negligence is imputable and chargeable to the defendant." No complaint is made of the charge that the negligence, if any, of the assistant in such particular was imputable and chargeable to the defendant. The complaint made is that the court thereby singled out and unduly emphasized and called attention to a matter of fact which had the tendency to cause the jury to give undue weight or consideration to such circumstance to the exclusion of other facts or circumstances of equal importance. We do not think the court offended the rule in the particular claimed, or that the charge had the effect or tendency to do what is claimed of it. The court, instead of merely charging abstractly that the defendant was responsible for whatever negligence, if any, was committed by the assistant in the course of the operation and relating to the charged negligence, charged the matter concretely. The charge is somewhat though not fatally involved, but is not open to the assault made on it.

The court also charged:

"8. It is undisputed in the evidence that the plaintiff was, while in the operating room at the hospital at the time and place in question, under the care of the defendant, and that no adjustments or changes of position of the operating table were made except upon the order of the defendant. You are instructed that it was the defendant's duty to exercise reasonable and ordinary care, that is, such care as would be exercised by the average member of his profession in good standing in this locality under the same or similar circumstances to see that no injury occurred to the plaintiff while under his care, and it was his duty in causing adjustments to be made upon the operating table, if any were made, and in causing said table to be raised or lowered, if it was raised or lowered, to exercise the aforesaid degree of care and diligence and see that the plaintiff was not injured thereby; and if you believe from the evidence that while the plaintiff was under said anesthetic and while on said operating table her hand was injured by reason of making adjustments on or raising or lowering said operating table, and that she would not have been injured if the defendant had exercised such care and diligence, then your verdict should be in favor of the plaintiff and against the defendant."

The complaint made of this charge is of the language, "and see that the plaintiff was not injured thereby." It is argued that by such language the jury in effect were told that the defendant owed the plaintiff an absolute duty, at all hazards and at all events, to see to it that the plaintiff was not injured; that the defendant in effect was thereby charged to have been an insurer of her safety. We do not think the charge open to such a construction. By what immediately precedes the phrase, the court defined the degree of care required of the defendant. No complaint is made of that. Then the court charged that in making adjustments of the table, if any were made, it was the duty of the defendant "to exercise the aforesaid degree of care and diligence to see that the plaintiff was not injured thereby." The phrase means no more than if the court had charged "to exercise the aforesaid degree of care and diligence so that the plaintiff was not injured thereby," or to exercise "the aforesaid degree of care" to avoid injury to the plaintiff by raising or lowering the table. The court in other portions of the charge instructed the jury that—

"A doctor employed to perform an operation on a person is not an insurer against all possible injuries, and that the presumption of negligence does not arise from proof of the mere fact that the plaintiff, without her fault, sustained an injury of unusual character while in the hospital."

And in connection therewith further charged that—

It was the duty of the defendant only "to exercise that reasonable and ordinary care and diligence to protect the plaintiff from injury to her person while under the influence of an anesthetic as is employed by the average physician or surgeon generally engaged in a similar line of practice in the same locality," etc.

The court further and elsewhere in the charge specifically directed the jury that to find a verdict in favor of the plaintiff they were required to find from a preponderance of the evidence that the defendant was guilty of negligence, as elsewhere in the charge defined and of which no complaint

is made, and that such negligence was the direct and proximate cause of the injury and but for which the injury would not have occurred. In view of all this, it is difficult to perceive that by the phrase complained of the jury were given any impression or that they understood that the defendant was an insurer or that they could render a verdict against him without finding negligence.

The court further charged that—

"No. 10. You are further instructed that if you find from the evidence that any one of the physicians or nurses who were assisting the defendant at the operation in the hospital and while the plaintiff was on the operating table was guilty of negligence in removing the arm or the hand of the plaintiff from the strap in which it had been placed on the operating table, and in their care and conduct of such arm either in removing it from the cuff or in failing to properly care for it after its removal therefrom, was guilty of any negligence in that respect, then I charge you that such negligence is imputable and chargeable to the defendant."

The complaint made of that is of the phrase, "or in failing to properly care for it after its removal therefrom, was guilty of any negligence in that respect." It is argued that by such language, and by similar language in another portion of the charge heretofore referred to, the jury was permitted to find negligence beyond and other than and different from that alleged in the complaint. We think the argument untenable. In the complaint it, among other things, in substance is alleged that while the plaintiff was under the influence of an anesthetic and insensible, the defendant negligently in the course of the operation caused or permitted the operating table to be raised in the center of it, thereby creating an open space, and negligently permitted plaintiff's hand to fall into the open space, and negligently and while plaintiff's hand was in the open space caused and permitted the table to be lowered and the ends brough together and tightly closed upon her hand, and as a result thereof her hand and fingers were injured. Thus, when the court charged that if any one of the

physicians or nurses assisting the defendant in the operation was guilty of negligence with respect to removing the hand of the plaintiff from the strap, or in failing to properly care for it after it was so removed, such was well within the allegations of negligence alleged in the complaint and directly germane thereto.

There are still other complaints made of the charge. We think them even less tenable than those referred to. Thus, on a careful consideration of all of the objections urged for a reversal of the judgment, we do not find any of them sufficient on which the judgment may legally be reversed. It therefore is affirmed, with costs to the respondent.

THURMAN, C. J., and CHERRY, HANSEN, and GIDEON, JJ., concur.